OPINION OF THE COURT
John Cataldo, J.
Defendant, Ping Cheung, was indicted for attempted grand *508 larceny in the first degree[1] (Penal Law §§ 110.00, 155.40), and coercion in the first degree (Penal Law § 135.65), both class D felonies. On January 31, 1983, defendant pleaded guilty to the top count, attempted grand larceny in the first degree, in full satisfaction of the indictment. At the same time, he pleaded guilty under indictment No. 1587/82 to criminal possession of a weapon in the third degree, also a D felony.
As part of the plea agreement, the presiding Judge promised Mr. Cheung he would make a recommendation against his deportation in addition to imposing a sentence of one year on each indictment, to be served concurrently. Specifically, the court stated:
“Mr. Cheung, in your case, I will promise, as well, to make a recommendation again [st] deportation as a result of these convictions, only that is not a recommendation against deportation for any other reason, such as, for example, but without limitation, your being an illegal alien, if you are an illegal alien.” (See, plea minutes of Jan. 31, 1983, at 14.)
At the sentencing proceeding, the promise of the judicial recommendation against deportation (JRAD) was reiterated by defense counsel; however, the recommendation was not made at that time. There is no record that the court ever made or attempted to make the promised recommendation against deportation. As a result, 17 years later, current counsel indicates that the defendant is now facing mandatory deportation by the Immigration and Naturalization Service (INS) as a result of his conviction and sentence under this indictment.
By notice of motion dated May 16, 2000 and supplemental papers dated October 17, 2000, defendant moves this court to set aside his sentence pursuant to CPL 440.20 due to the unfulfilled sentencing promise, or, in the alternative, defendant moves to have his conviction vacated based upon ineffective assistance of counsel. (CPL 440.10 [1] [h].)
The People, in their responding papers, acknowledge that the Judge, as a condition of the defendant’s plea, promised he would make a recommendation against deportation. However, the People contend that defendant’s motion should be denied because defendant waited 17 years to move for postconviction *509 relief under CPL 440.10 and 440.20, and, secondly, because deportation is a collateral consequence of defendant’s conviction.
After consideration of all of the submissions from the defendant and the People, review of the court file, the plea minutes, the sentencing minutes, and the applicable law, I conclude that the sentence must be vacated.
Initially, the defendant’s claims are not time barred. Motions under CPL 440.10 and 440.20 have no time limitations and may be initiated at any time after the entry of judgment. In this case, defendant was unaware that the court’s promise to recommend against his deportation had not been fulfilled until deportation proceedings were commenced against him a short time ago. Thus, he did not unjustifiably delay the filing of this motion.
Secondly, in this case, defendant’s deportation is not a collateral consequence of his plea within the meaning of People v Ford (86 NY2d 397, 403 [1995]). In Ford, the Court held that the mere possibility of deportation was not a direct consequence of a conviction because whether or not a defendant would be deported as a consequence of his State conviction it was not within the control of our State courts. Thus, the failure to warn of possible deportation did not violate due process of law. Additionally, the failure of a defense attorney to warn his client of the possibility of deportation will not constitute ineffective assistance where it is a collateral consequence of the plea. (People v Ford, supra, 86 NY2d, at 405; see also, People v Agero, 234 AD2d 94 [First Department, writing in 1996, notes that deportation is not within the control of our court system].) However, Ford (supra, at 405) left open the possibility that affirmative misstatements by defense counsel regarding immigration consequences could constitute ineffective assistance. (See, e.g., Downs-Morgan v United States, 765 F2d 1534 [11th Cir 1985] [when a defendant is incorrectly told that deportation will not occur, this may constitute ineffective assistance of counsel].) In Ford, the defendant did not claim his attorney incorrectly advised him of the risk of deportation or that his attorney’s advice as to his immigration consequences induced him to plead guilty. Therefore, these issues were not further explored.
The facts of this case are markedly different from those in Ford (supra). In the first instance, this case does not concern the same deportation laws that Ford addressed. Under the immigration laws in effect in 1983, whether or not this defendant *510 would be deported as a consequence of this conviction was entirely within the control of the State court Judge. By promising to recommend, as part of the bargained-for plea, that the defendant not be deported, the State Judge had the absolute power to prevent this defendant’s deportation on the basis of these two convictions.
Until its repeal in 1990, section 1251 (b) (2) of title 8 of the United States Code (Immigration and Nationality Act of 1952 § 241 [B] [2]) stated that its provisions regarding deportation of aliens convicted of certain crimes of moral turpitude for which a sentence of a year or more had been imposed (subd [a] [4]) shall not apply:
“if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the [Immigration and Naturalization] Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matters.”
If the proper notification procedures had been followed, in accordance with the Federal statute, the State court’s recommendation would have to be followed and the defendant could not be deported. (See, Haller v Esperdy, 397 F2d 211, 213 [2d Cir 1968]; Velez-Lozano v Immigration & Naturalization Serv., 463 F2d 1305 [DC Cir 1972].) Thus, Mr. Cheung would not currently be facing deportation for these convictions if the State court Judge’s promised recommendation had been properly made.
It is well settled that a sentence which fails to carry out the terms of a bargained-for plea agreement is invalid as a matter of law, within the meaning of CPL 440.20. Thus, a guilty plea, such as the one herein, “induced by an unfulfilled promise either must be vacated or the promise honored.” (People v Selikoff, 35 NY2d 227, 241 [1974], citing Santobello v New York, 404 US 257, 260.)
The People contend that despite the unfulfilled promise, the conviction and sentence must stand because it was defense counsel, rather than the court, who should have notified the Federal authorities. Although I find defense counsel was, in fact, ineffective for failing to either make the notifications or for failing to ascertain that they had been made, the court *511 itself had an obligation to implement its promises or give the defendant his plea back. In any event, the Federal case law does not support the People’s conclusion that the judgment is valid.[2] Even if the JRAD could not be enforced due to the notification error, the plea and sentence are rendered invalid by the failure to fulfill the court’s promise. This court is concerned with whether the defendant received the benefit of his plea bargain. It is undisputable that the court’s promise to make a JRAD was a material promise upon which the defendant relied in pleading guilty. That promise was never fulfilled. Thus, the sentence must be set aside.
What effect, if any, this resentencing will now have on the deportation proceedings is not within the control of this court. Defense counsel believes that by reducing the term of incarceration (which has already been served in full) by just one day, the defendant will be eligible for a discretionary hearing regarding deportation. As it now stands, defendant’s deportation will be mandatory. At this time, a resentencing is the closest means available to effectuating the original court’s promise. *512 Thus, in order to fulfill the prior Judge’s sentencing promise now, 17 years later, defendant will be resentenced to a period of less than one year’s incarceration.
Accordingly, the sentence is set aside. The court will schedule the case for resentencing, at which time the defendant will be resentenced on this indictment to 364 days or less of incarceration.
Because the defendant’s argument on the ineffectiveness of his counsel was made in the alternative, if CPL 440.20 relief was not granted, the conviction itself will not be vacated. However, I note that, were I not granting defendant’s primary motion for CPL 440.20 relief, I would vacate the conviction for ineffectiveness of counsel.
The right to the effective assistance of counsel is guaranteed to all defendants by the United States Constitution as well as by the State Constitution. (US Const 6th Amend; NY Const, art I, § 6; CPL 210.15 [2].) In determining whether a defendant has received the effective assistance of counsel, a court must determine whether the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation. (People v Baldi, 54 NY2d 137, 147 [1981].)
Where an attorney obtains a promise that the court will recommend against deportation and such promise requires a hearing upon notice to the Federal authorities, that attorney’s obligation to his client does not end until he sees to it that the recommendation is made in court as promised. As noted in People v Hyun Chul Nho (137 Misc 2d 978 [Sup Ct, Queens County 1987]), an attorney is ineffective where, by failing to notify the Attorney General of the United States, the recommendation is rendered useless and disregarded by the INS. As previously discussed, in People v Ford (86 NY2d 397, 405, supra) the Court distinguished the mere failure to advise of deportation consequences from affirmative misstatements or misadvice which induces a defendant to take a plea. (See, Downs-Morgan v United States, supra.) Here, a review of the plea minutes clearly demonstrates the central nature of the JRAD to the plea and defendant’s reliance upon the statements of his counsel that the sentencing Judge was going to make the recommendation against his deportation.
This case is distinguishable from those in which a defendant was not prejudiced by an attorney’s failure to request a JRAD, where a defendant would not have been eligible for the relief in *513 any event, or where the court would not have promised to make the recommendation if counsel had raised it with the court. (Cf., People v Ahmetovic, 157 AD2d 489 [1st Dept], lv denied 75 NY2d 963 [1990].) Ahmetovic specifically pointed out that no showing had been made in that case that the defendant would not have pleaded guilty if her counsel had advised her of the deportation consequences of her plea. In the current matter, just the opposite is true. It is indisputable that Mr. Cheung pleaded guilty only after being expressly promised that he would not be deported. Thus, while it is correct that the failure to request a JRAD, in and of itself, does not constitute ineffective assistance of counsel (People v Cuello, 188 AD2d 428 [1st Dept 1992], lv denied 81 NY2d 969 [1993]), much more than a failure to request a JRAD is at issue in this case. Here, an express promise was made to this defendant, that the court would make a JRAD: the functional equivalent of a promise that the defendant would not be deported, a power that the State court still had in 1983. Defense counsel failed to take the necessary steps to see to it that promise was fulfilled. In such a situation, effective assistance has not been provided. (See, e.g., United States v Corona-Maldonado, 46 F Supp 2d 1171 [D Kan 1999] [guilty plea set aside due to ineffective assistance of counsel where defendant chose to plead guilty only after being incorrectly informed by his attorney that he would not be deported as a consequence of his plea].)
As previously noted, because defendant has moved in the first instance for resentencing, and such a procedure will be adequate to alleviate the prejudice suffered by this defendant through the failure to fulfill the original sentence promise, defendant’s motion under CPL 440.20 is granted and decision under CPL 440.10 is rendered moot. However, I note that were CPL 440.20 relief not available, defendant’s CPL 440.10 (1) (h) motion would be granted.
Conclusion
Defendant’s motion to set aside his sentence, pursuant to CPL 440.20, is granted.

. This crime, grand larceny by extortion, now appears as Penal Law § 155.40 (2), and is currently designated grand larceny in the second degree. It was redesignated in 1986 when a new crime of grand larceny in the first degree was added as Penal Law § 155.42 for thefts exceeding one million dollars in value.

. Section 1251 (b) (2) of title 8 of the United States Code did not place the duty to notify the required authorities on any particular party. As noted in Haller v Esperdy (supra), there was no explicit regulation in the Immigration and Nationality Act as to who gives notice of an intention to recommend against deportation. The INS, in recognition of the statute’s ambiguity, was observed in Haller to have taken the position that notice may be given either by counsel or by the court. (Id., at 214.) Likewise, in Cerujo v Immigration & Naturalization Serv. (570 F2d 1323, 1325 [7th Cir 1978]), the court pointed out that notification is sometimes made by the sentencing Judge and sometimes by the party’s attorney. When notice was not shown to have been timely made, either by the court or defense counsel, the Federal courts generally upheld the INS in its refusal to give effect to JRADs. (See, Annotation, Convicted Alien’s Entitlement to Recommendation Against Deportation under §241 [B][2] of Immigration and Nationality Act of 1952 [8 U.S.C.A. § 1251(B)(2)], 96 ALR Fed 832 [1990].) Some Federal courts, however, refused to give such a strict construction to the notice conditions and ordered consideration of JRADs despite noncompliance with those provisions. (See, Haller v Esperdy, supra [the Second Circuit ordered the defendant could not be deported, despite the failure to notify the Immigration and Naturalization Service, where the Judge had expressly promised to make the required notice]; Cerujo v Immigration & Naturalization Serv., supra [untimeliness of notice excused where no prejudice to INS and sentencing Judge could still hear views of INS before making final recommendation].)
It is evident that these Federal cases only address the power of the Federal courts to compel the INS to accept a recommendation against deportation when a State court does not strictly follow the procedures set forth in the Immigration and Nationality Act. In the current matter, I am not concerned with compelling the INS to do anything, nor could I now do so. In point of fact, the JRAD no longer exists and nunc pro tunc JRADs will not be given effect by the INS.