OPINION OF THE COURT
John R. Schwartz, J.
Defendant was arrested on August 10, 2001, and charged with forgery in the second degree in violation of Penal Law § 170.10 and attempted petit larceny in violation of Penal Law §§ 155.25 and 110.00. The defendant entered a plea of guilty to *591 forgery in the second degree by waiver of indictment on or about November 15, 2001, before Honorable Joseph Valentino, Acting County Court Judge and Presiding Judge of the Rochester drug treatment court. At the time of his plea, the defendant was promised a sentence of probation if he successfully completed drug court. In the alternative, defendant was told that he would be given a period of state incarceration if he did not successfully complete a drug treatment program.
On May 10, 2002, the defendant was terminated from drug court by Acting County Court and now Presiding Judge of Rochester drug treatment court Roy Wheatley King. A motion was made by the defendant to have Judge King recuse himself from the matter due to Judge King’s representation of the defendant’s family many years earlier. Judge King complied with that request and the matter was transferred to this court to carry out the sentence promise originally made by Judge Valentino. Defendant now moves prior to sentence for a hearing pursuant to People v Outley (80 NY2d 702) claiming that he was terminated unjustifiably. Defendant further moves to have factual issues determined concerning the explosive and angry behavior that contributed to his termination from the Norris Clinic. (May 31, 2002; second supplemental affirmation, June 6, 2002.)
It is crucial to note at the outset that the defendant is incorrect in his assumption that an Outley hearing will permit the court to order the relief that the defendant demands. The defendant entirely misses the point in his reliance on People v Outley (80 NY2d 702) for a remedy to this eleventh hour claim of unjustifiable termination. The history of an Outley hearing stems from the case of People v Outley (80 NY2d 702) where the court imposed the condition that to receive a reduced sentence, the defendant was not to be arrested for any reason prior to sentence. The defendant was arrested. Upon review, it was held that due process demands that prior to enhancing sentence, a court must first determine that the new arrest has a rational basis (Outley, 80 NY2d 702, 703).
To understand the error in defendant’s request, a brief review of the interplay of plea bargains and due process is warranted. As a matter of law, “plea bargaining plays a vital role in the criminal justice system, and that ‘an integral part of the plea bargaining process is the negotiated sentence.’ ” (People v Parker, 271 AD2d 63, 68, lv denied 95 NY2d 967, citing People v Farrar, 52 NY2d 302, 306.) In addition, the court has discretion to impose conditions upon its approval of a *592 negotiated sentence as long as the conditions do not violate any statute or contravene public policy (Parker, 271 AD2d 63, 68, citing People v Avery, 85 NY2d 503).
Importantly, the Court in Parker noted that: “the imposition and enforcement of sentencing conditions must satisfy the requirements of due process (see, People v Naranjo, 89 NY2d 1047, 1049; People v Outley, 80 NY2d 702, 712) and ‘must not * * * “amount to overreaching or a denial of defendant’s right to fundamental fairness” ’ ” (Parker, 271 AD2d 63, 68, citing People v Grant, 99 AD2d 536, quoting People v Miller, 79 AD2d 687, 688, cert denied 452 US 919).
Among the plea bargained conditions consistently upheld by courts and the one from which the defendant’s request for a hearing emanates, is the condition of “no arrest” between plea and sentencing. (Outley, 80 NY2d 702, 707.) Another condition often imposed, and the one applicable here, is the completion of a drug rehabilitation program prior to sentencing (Parker, 271 AD2d 63, 69). Here, the defendant entered into a plea bargain, the terms being: complete the drug treatment court’s program and you will be given a sentence of probation; if you do not satisfactorily complete the program, you will be incarcerated. Tying a reduced sentence to successful completion of a drug treatment court is favored by the courts. (People v Parker, 271 AD2d 63, 69.) This is what a drug treatment court is all about. Just as importantly, the “[s]entence enhancement based on defendant’s violation of the condition, moreover, did not violate any statute or public policy” (People v Hicks, 98 NY2d 185, 189). In Parker, there was no rational basis for the Court’s enhanced sentence. Here, the conditions of drug court were explicit, objective, accepted by the defendant, and as hereafter explained, clearly breached (People v Hicks, 98 NY2d 185; but cf. People v Outley, 80 NY2d 702).
As to the court’s duty to review information before imposing a sentence, it has long been held that, “any sentence promise at the time of the plea is, as a matter of law and strong public policy, conditioned upon its being lawful and appropriate in light of the subsequent presentence report or information obtained from other reliable sources.” (People v Selikoff, 35 NY2d 227, 238 [internal quotation marks omitted].) To assure itself of the reliability of information, and thus meet due process concerns, the court must conduct inquiry before passing sentence, but the nature and extent of the inquiry is within the court’s discretion, pursuant to the direction of CPL 400.10.
For example, in People v Knowles (244 AD2d 425), prior to the imposition of sentence, the defendant was given an op *593 portunity to explain her earlier initial failure to appear and her failure to register for a drug treatment program. The defendant was unable to give a plausible explanation. The reviewing court held that “[c]ontrary to the defendant’s contention, the court did not err in declining to hold a hearing * * * (see, CPL 400.10), and properly imposed a sentence of incarceration” (Knowles, 244 AD2d 425, 426; see also, People v Wallen, 284 AD2d 1010; People v Ortiz, 266 AD2d 47).
Applying this standard to the instant matter, this court will herein review the records to determine the basis for termination from the drug treatment court. To this end, despite defendant’s allegations (made upon information and belief) that the defendant was compliant and that the real failure rests with the drug court’s placing the defendant in the wrong treatment program, court records and records from the treatment agency offer a far different scenario concerning the defendant’s termination.
The defendant pledged his complete cooperation with the drug treatment provider on the date that his plea was taken in front of Judge Valentino on November 15, 2001. The following is relevant dialogue between the defendant and the court from that date.
“the court: If you want to do this it’s a hundred percent cooperation. You understand we are taking urine tests. You lie to me, you go to jail. The bottom line in drug court is you can’t lie about anything, can’t miss any appointments, groups, anything like that. Do you understand that?
“the defendant: Yes, sir.” (Transcript of plea, Nov. 15, 2001, at 3.)
“the court: Do you still want to do this?
“the defendant: Yes, I do.” (Transcript of plea, Nov. 15, 2001, at 4.)
“the court: Mr. Nitti, what is the DA’s position on the felonies before us?
“mr. nitti: * * * Shock probation would be deemed satisified in the event that he were to successfully complete this drug court program. If, of court [sic], he fails in any way to comply then we would be asking for a state prison term.” (Transcript of plea, Nov. 15, 2001, at 7.)
“the court: As part of this plea today you will sign a drug court diversion contract with us. That means you are agreeing to meeting face to face with case *594 manager and follow all of their recommendations. Do you understand that?
“the defendant: Yes, I do.
“the court: You’re agreeing to come to court whenever your drug court manager tells you to or whenever I tell you to. Do you understand that?
“the defendant: Yes, I do.
“the court: If you miss a court date I issue a bench warrant for your arrest. You saw me doing that today.
“the defendant: Yes, I do.
“the court: Police go out to find you, don’t find you or you don’t come back within thirty days of bench warrant I will sentence you in absentia to the maximum sentence. I will sentence you to prison. When they do pick you up you’re out of the drug court, you go to prison. Do you understand that?
“the defendant: Yes, I do.” (Transcript of plea, Nov. 15, 2001, at 18.)
It is obvious from the above colloquy that the defendant was well aware of the cooperation he had to give in order to successfully complete the drug treatment program. This agreement to cooperate notwithstanding, a review of the defendant’s records from the drug treatment court as well as reports from the Norris Clinic demonstrate that the defendant failed to cooperate with the drug treatment provider. The record of the drug treatment court offers the following insight. Initially, each defendant is told that they must appear on each and every scheduled date. The defendant took a plea on November 15, 2001. On November 30, 2001, it was determined that the defendant was taking pain medicine with opiates, which required a change in prescription. As early as December 7, it was reported to the court that the defendant had tested positive for cocaine use. The matter was reviewed with the defendant. The court continued the defendant in treatment and the case was adjourned until December 14, 2001. At that time the defendant did not appear, but his attorney was present. It should be noted that the defendant has had the benefit of the same counsel throughout this entire matter. On December 14, his attorney stated that the defendant was in the hospital. The defendant had not been contacting the court or the Norris Clinic to explain his absence. The court continued the matter to December 20, and the defendant was present. The defendant was told that he had been noncompliant as a result of not *595 reporting his whereabouts to the court or the treatment provider. The matter was adjourned to January 4, 2002, at which time the defendant did not appear. The defendant continued to fail to contact the court, and a bench warrant was ordered. Although the court and the drug treatment provider attempted to contact the defendant, the defendant was not in court until March 29, after being arrested on the bench warrant and held in custody.
Again, the court agreed to keep the defendant in treatment and to continue to evaluate the case as the defendant claimed that he had been in the hospital. The case was adjourned to April 5, 2001 when the defendant was told that he was being given a last chance. The Veterans Association agreed to work with the defendant and the treatment provider was looking for an in-patient bed for the defendant. The matter was adjourned to April 12, at which time the defendant appeared, and a discussion ensued about the defendant’s argumentative state concerning the treatment recommendation. On April 22, the defendant was told that an in-patient bed had been located and the defendant’s presence in court was excused on April 29 because of his in-patient status. Between this date and May 2, the defendant was administratively discharged from the Norris Clinic as a result of his argumentative behavior. The notations from the records of the Norris Clinic indicate that the defendant was cleared for treatment by a staff psychiatrist. The report also states that the defendant struggled in the program, had several angry outbursts that escalated in intensity and was counseled about his inappropriate behavior. The Norris Clinic counseled the defendant as to his behavior, but counseling did not help to rectify the behavior problem. (Norris Clinic report, May 9, 2002, attached to defendant’s second supplemental affirmation.) Court records reflect that the defendant was told that he needed to appear in court on May 2nd. The defendant did not appear and a bench warrant was issued. The defendant was arrested on the bench warrant and in court on May 7th. At that time, the matter was adjourned until May 10, and the defendant made this instant motion for a further hearing.
It is crucial to note that each and every time the defendant came into court, the defendant’s case was discussed with him in full; and he received what is tantamount to a hearing at every court date, with all of the facts of his case being reviewed. The defendant’s failure to maintain contact with the court, failure to maintain contact with his treatment provider, failure to *596 appear in court, failure to cooperate, documented drug use and argumentative behavior all speak for themselves.
Defendant’s papers also attempt to argue that the defendant has some due process right to have a different drug treatment program provided for him. No such due process right exists. There is no basis to support defendant’s claim that due process would afford him any right to a different drug treatment program. As recently noted, “Drug courts are being established by the Judiciary in an effort to provide non-violent drug offenders the opportunity to participate in rehabilitation as an alternative to incarceration” (1999 Legislative Program of NY State Judiciary, reprinted following NY Cons Laws Serv, Book 7B, CPL 170.15, 2002 Supp Pamph, at 115). The defendant was afforded that opportunity and did not complete the program. Courts have specifically rejected constitutional claims to drug treatment programs, holding that in order to establish a due process deprivation, defendant would have to establish a right grounded in state law (Palmieri v Cuomo, 170 AD2d 283; see also record on appeal, affirmation of Carol Schechter in support of defendants’ motion to dismiss, at 5). Here, defendant has made no such showing.
Defendant’s due process right to fairness has been satisfied by the treatment provider and this court. The court will proceed with sentencing.