OPINION OF THE COURT
Lynn R. Kotler, J.
On November 24, 2009, the defendant Jermaine Bennett moved to vacate judgment pursuant to CPL 440.10 (1) (h). The People opposed the motion in an affirmation by Assistant District Attorney (ADA) Justin J. Braun dated December 16, 2009. Mr. Bennett submitted a reply affirmation by Marisel Rodriguez, Esq. dated December 29, 2009. ADA Braun submitted a supplemental affirmation in opposition dated May 11, 2010, in light of the recent decision by the United States Supreme Court in Padilla v Kentucky (559 US —, 130 S Ct 1473 [2010]), which held that advice regarding deportation falls within the ambit of the Sixth Amendment right to counsel.
Facts and Arguments
Mr. Bennett was arrested on June 16, 2005 based upon allegations that the police discovered a ziplock bag containing a large quantity of marijuana located below the seat of a car occupied by the defendant. On December 14, 2005 the defendant pleaded guilty to Penal Law § 221.10 (2), criminal possession of marijuana in the fifth degree, in exchange for a conditional discharge and seven days of community service. The defendant did not file a direct appeal of his conviction.
In his affidavit, Mr. Bennett claims that his plea was not voluntary because it was entered into based upon affirmative misrepresentations and omissions of information by his attorney concerning the immigration consequences of the plea. Specifically, the defendant claims that prior to entering his guilty plea, he informed his court-appointed attorney, Jeffrey Pogrow, Esq., that he had a previous violation for marijuana possession and that his mother had filed a petition on his behalf to adjust to permanent lawful residence in the United States. The defendant claims that he asked Attorney Pogrow if a guilty plea to Penal Law § 221.10 (2) would have any immigration consequences. Attorney Pogrow then allegedly responded “ ‘[n]o’, and *577 then, almost as an afterthought, said that he did not think it would.” Mr. Bennett maintains that he believed he was receiving sound advice relating to his immigration case.
On December 14, 2005 Attorney Pogrow indicated on the record in open court that he had informed the defendant of “a possible immigration consequence.” The defendant took that to mean that Attorney Pogrow was just letting the court know that they had “talk[ed] about the immigration consequences which . . . were none.”
Mr. Bennett states that since taking the plea, his life, and that of his family, have been “turned upside down” because he was denied adjustment of status and deemed deportable from the United States based upon the subject conviction. He claims that had he known his guilty plea would have such consequences, he would have gone to trial in this matter.
The People have provided an affidavit by Attorney Pogrow wherein he maintains that he discussed the plea bargain at length with the defendant and informed him that if he pleaded guilty, “it was possible that he would later face an immigration consequence that could affect his immigration status.” Attorney Pogrow maintains that despite such advice, Mr. Bennett chose to take the People’s offer in lieu of going to trial.
In opposition to the defendant’s motion, the People argue that: (1) Padilla cannot be retroactively applied to final judgments; (2) assuming the factual allegations are true, Attorney Pogrow’s advice meets the requirements of the Sixth Amendment; (3) the defendant has failed to establish prejudice as a result of the alleged ineffective assistance of counsel; and (4) the instant motion should be denied due to defendant’s delay in moving to vacate his conviction.
Discussion
Before deciding whether to plead guilty, a defendant is entitled to “the effective assistance of competent counsel” (McMann v Richardson, 397 US 759, 771 [1970]; Strickland v Washington, 466 US 668 [1984]). The Court of Appeals had previously held that deportation was a collateral consequence, and therefore, the failure of a defendant’s attorney to warn him or her of the possibility of deportation as a result of a guilty plea was not grounds for an ineffective assistance of counsel claim (People v Ford, 86 NY2d 397, 405 [1995]; see also People v Gravino, 14 NY3d 546, 559-560 [2010, Ciparick, J., dissenting]). However, the United States Supreme Court rejected the direct versus col *578 lateral distinction with respect to advice concerning deportation, and held that the Sixth Amendment requires criminal defense attorneys to advise their noncitizen clients if there is a risk of deportation as a consequence of a conviction (Padilla, 559 US at —, 130 S Ct at 1482).[1]
The People argue that Padilla should not be retroactively applied to the defendant’s conviction. Since there is no dispute that Mr. Bennett’s conviction became final before Padilla was rendered, the court must decide whether Padilla created a new rule or not. A federal constitutional rule of criminal procedure is applicable to those cases which have become final before it was announced, unless it creates a new rule of law (see Teague v Lane, 489 US 288, 311 [1989]; People v Eastman, 85 NY2d 265 [1995]). “Application of constitutional rulés not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system” (Teague, 489 US at 309).
The majority did not expressly state in Padilla that its holding should be applied retroactively to cases on collateral review. Therefore, if Padilla created a “new rule,” the rule can only be applied to Mr. Bennett’s conviction, which became final well before the Padilla decision was rendered, if the rule falls within one of two narrow exceptions enumerated in Teague (Teague v Lane, 489 US 288, 307 [1989]). New constitutional rules are applied retroactively if: (1) the new rule places “certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe”; or (2) the new rule alters a bedrock procedural element of criminal procedure which implicates the fundamental fairness and accuracy of the trial (see Teague, 489 US at 311, quoting Mackey v United States, 401 US 667, 692 [1971, Harlan, J., concurring in part and dissenting in part]; People v Eastman, 85 NY2d 265 [1995]).
However, Padilla did not announce a new constitutional rule, but merely applied the well-settled rule in Strickland to a particular set of facts.
“[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant’s *579 conviction became final” (Teague, 489 US at 301 [citations omitted]).
“While there can be no dispute that a decision announces a new rule if it expressly overrules a prior decision, it is more difficult ... to determine whether we announce a new rule when a decision extends the reasoning of our prior cases” (Graham v Collins, 506 US 461, 467 [1993], quoting Saffle v Parks, 494 US 484, 488 [1990]).
In Padilla, the Court did not overrule a clear past precedent. Rather, the Court held that Strickland applies to advice concerning deportation, whether misadvice or no advice at all (see Padilla, 559 US at — n 12, 130 S Ct at 1485 n 12) because deportation was such a devastating result “intimately related to the criminal process” (559 US at —, 130 S Ct at 1481).
The Supreme Court has held in another case that applying Strickland to a new set of facts did not establish a new rule under Teague. In Williams v Taylor (529 US 362, 380-381 [2000]), the Court recognized the “inevitable difficulties” that come with “attempting ‘to determine whether a particular decision has really announced a “new” rule at all or whether it has simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law.’ ” However, the Williams Court held that merely applying Strickland to a new scenario does not create a new rule, as “it can hardly be said that recognizing the right to effective counsel breaks new ground or imposes a new obligation on the States” (529 US at 391). The rationale behind this aspect of the holding in Williams is illustrated by Justice Kennedy’s explanation that
“[i]f the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule. . . . Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent” (Wright v West, 505 US 277, 308-309 [1992, concurring op]).
The rule in Strickland necessarily requires a fact-specific analysis, and Padilla held that Strickland should be applied in the context of advice concerning deportation. Padilla is the type of case that merely extends an existing rule rather than creat *580 ing a new one. At least one other court has found that Padilla did not create a new rule for retroactivity purposes as well (see United States v Guzman-Garcia, 2010 WL 1791247, *2, 2010 US Dist LEXIS 42930, *4 [ED Cal 2010] [stating that Padilla did not “newly recognize a right upon which defendant may rely to reset the running of the limitations period”]).
Moreover, if the Supreme Court did not intend for Padilla to be retroactively applied, that would render meaningless the majority’s lengthy discussion about concerns that Padilla would open the “floodgates” of challenges to guilty pleas (559 US at —, 130 S Ct at 1484 [“we must be especially careful about recognizing new grounds for attacking the validity of guilty pleas” (559 US at —, 130 S Ct at 1485); “It seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains” (¿<Y)]).
Insofar as past precedent “dictated” that this court apply the Strickland test to an ineffective assistance claim, prior to Padilla, that aspect of the “new rule” analysis does not compel a different result (see Williams, 529 US at 391; see also Graham v Collins, 506 US 461 [1993]; Saffle v Parks, 494 US 484 [1990]). Even though New York courts had previously rejected ineffective assistance of counsel claims premised on the failure to advise regarding deportation consequences under Ford, the possibility that misadvice concerning deportation could give rise to a valid Strickland claim was not foreclosed (86 NY2d at 405; see also People v McDonald, 1 NY3d 109, 111 [2003] [“under certain circumstances, a defense counsel’s incorrect advice as to deportation consequences of a plea may constitute ineffective assistance of counsel”]). It can hardly be said that the holding in Padilla departs from established precedent (cf. People v Eastman, 85 NY2d 265, 274 [1995]).
Since the Court finds that Padilla does not create a new constitutional rule, it must be retroactively applied to the instant case.
The Strickland Test
Under Strickland, the court must first determine whether Attorney Pogrow’s representation “fell below an objective standard of reasonableness” (466 US at 688). The second prong of this test is whether “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different” (id. at 694).
The first prong of the Strickland test is based upon the practice and expectations of the legal community. The proper *581 measure of attorney performance remains simply reasonableness under prevailing professional norms. The court’s “review of counsel’s performance must be deferential, and reasonableness must be considered in light of ‘prevailing professional norms’ ” (Peralta v United States, 597 F3d 74, 79 [1st Cir 2010], quoting Strickland, 466 US at 688). American Bar Association standards and the like may be valuable measures of the prevailing professional norms of effective representation (Padilla, 559 US at —, 130 S Ct at 1482, citing Strickland, 466 US 668, 688; Bobby v Van Hook, 558 US —, —, 130 S Ct 13, 16 [2009 per curiam]; Florida v Nixon, 543 US 175, 191 n 6 [2004]; Wiggins v Smith, 539 US 510, 524 [2003]; Williams v Taylor, 529 US 362, 396 [2000]).
In Padilla, the Supreme Court held that based on prevailing professional norms, an attorney must advise his or her client regarding the risk of deportation (559 US at —, 130 S Ct at 1482-1483).[2] Further, it stands to reason that in a city as diverse as New York, with a large number of noncitizens residing therein, the provision of advice concerning the possibility of deportation as a specific consequence of a conviction would at least be as normative and commonplace as anywhere else in the United States. To wit, the New York State Bar Association has been publishing articles advising criminal attorneys to study and advise their clients regarding the immigration consequences of guilty pleas and criminal convictions since 1989 (see Bendik and Cardoso, Immigration Law Considerations for the Criminal Defense Attorney, 61 NY St BJ 33 [July 1989]; see also New York State Bar Association, Criminal Justice Section, As Deportation Increases, Criminal Law Attorneys Should Consider Deportation Consequences When Handling Criminal Cases, 7 NY Crim L Newsl [No. 1] 24 [winter 2009]; New York State Bar *582 Association, Criminal Justice Section, Misleading Deportation Information May Doom Guilty Plea, 4 NY Crim L Newsl [No. 2] 30 [spring 2006]; New York State Bar Association, Criminal Justice Section, Deportation as a Consequence of a Criminal Conviction, 4 NY Crim L Newsl [No. 1] 25 [winter 2006]; Muldoon, Collateral Effects of a Criminal Conviction, 70 NY St BJ 26 [July/Aug. 1998]). As well, the New York City Bar Association has published a report outlining similar issues (New York City Bar Association, The Immigration Consequences of Deferred Adjudication Programs in New York City, http://www.nycbar.org/ pdf/report/Immigration.pdf [June 2007] [accessed June 10, 2010]).
The New York State Legislature is also grappling with this issue. Currently, there is a bill pending before the New York State Assembly to amend the CPL to require a court advisement of the possible immigration consequences of a conviction (2010 NY Assembly Bill A4957; see also New York City Bar Association, Committee on Immigration and Nationality Law, Mem in Support of 2006 NY Assembly Bill A5285 http://www.nycbar.org/pdf/ report/advisal_bill.pdf [accessed May 19, 2010]).
Based upon the overwhelming volume of national and local publications recommending the provision of advice to a defendant concerning the risk of deportation, the court finds that such advice should have been given to Mr. Bennett under then-prevailing professional norms. Accepting the defendant’s allegations as true, he has alleged sufficient facts to warrant a hearing as to whether Attorney Pogrow incorrectly advised him, or failed to advise him at all, regarding the specific immigration consequences of his guilty plea. Under Padilla, Attorney Po-grow’s purported advice, to wit, that there were no immigration consequences, that he didn’t think there were any, or even stating on the record that he informed the defendant of “a possible immigration consequence,” falls below reasonable professional norms. “[I]t is quintessentially the duty of counsel to provide [his or] her client with available advice about an issue like deportation and the failure to do so clearly establishes the first prong of the Strickland analysis” (Padilla, 559 US at —, 130 S Ct at 1484 [citation omitted]; cf. People v Robles-Mejia, 27 Misc 3d 1219[A], 2010 NY Slip Op 50808[U] [2010]).
The People’s related argument, that Padilla should be limited to affirmative misadvice, is also unavailing. First, the defendant has indeed alleged affirmative misadvice. However, the Supreme Court squarely rejected the theory that ineffective assistance *583 can only be predicated on affirmative misadvice concerning deportation (Padilla, 559 US at —, 130 S Ct at 1484). The majority in Padilla stated that its principal concern is to protect noncitizens from incompetent attorney representation facing the risk of deportation, a penalty equivalent to “banishment or exile” (559 US at —, 130 S Ct at 1486, quoting Delgadillo v Carmichael, 332 US 388, 391 [1947]). Holding that effective assistance by a criminal defense attorney can be realized by simply failing to advise a noncitizen client about the risk of deportation would create a loophole in Padilla.
The court also finds that Mr. Bennett has alleged sufficient facts to support a finding that had he known the potential immigration consequences prior to entering his guilty plea, there is a reasonable probability that he would have chosen to proceed to trial (see Strickland, 466 US at 694). The defendant alleges that his mother had filed a petition on his behalf to adjust to permanent lawful residence, and that prior to entering his plea, he was concerned about whether a conviction would negatively impact his application and immigration status in the United States. These facts, if proven, are sufficient to meet the second prong of Strickland (cf. Hill v Lockhart, 474 US 52, 60 [1985]; see also United States v Garcia, 57 Fed Appx 486 [2d Cir 2003]; United States v Coffin, 76 F3d 494 [2d Cir 1996]; Heyward v Costello, 1994 WL 263426, 1994 US Dist LEXIS 7754 [SD NY 1994]).
Lastly, the People contend that the instant motion should be denied due to defendant’s delay in moving to vacate his conviction. A motion under CPL 440.10 does not have a time limitation and may be initiated at any time after entry of judgment (see People v Corso, 40 NY2d 578 [1976]). Moreover, any delay in making this instant motion was not unreasonable and was otherwise justifiable insofar as the motion was made shortly after Mr. Bennett was placed in removal proceedings, at which point the defendant claims he became fully aware of the actual consequences of his guilty plea (see e.g. People v Ping Cheung, 186 Misc 2d 507 [Sup Ct, NY County 2000]). Otherwise, the People’s conclusory claim of prejudice by having to try this case now is insufficient to defeat the instant motion.
Accordingly, the court hereby orders that a hearing be held to determine whether the judgment was obtained in violation of the defendant’s Sixth Amendment right to counsel as outlined herein.
*584 Conclusion
In accordance herewith, it is hereby ordered that a hearing be held to determine whether the judgment was obtained in violation of the defendant’s Sixth Amendment right to counsel as outlined herein.

. The Supreme Court , reserved the issue of whether the direct/collateral consequences distinction has any place in Sixth Amendment right to counsel analysis (Padilla, 559 US at —, 130 S Ct at 1481).

. “For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a chent’s plea” (Padilla, 559 US at —, 130 S Ct at 1485). In support of this finding, the Supreme Court relied on the following treatises, reports and publications: National Legal Aid and Defender Association, Performance Guidelines for Criminal Representation § 6.2 (1995); G. Herman, Plea Bargaining § 3.03, at 20-21 (1997); Chin and Holmes, Effective Assistance of Counsel and the Consequences of Guilty Pleas, 87 Cornell L Rev 697, 713-718 (2002); A. Campbell, Law of Sentencing § 13:23, at 555, 560 (3d ed 2004); Department of Justice, Office of Justice Programs, 2 Compendium of Standards for Indigent Defense Systems, Standards for Attorney Performance, at DIO, H8-H9, J8 [2000]; ABA Standards for Criminal Justice, Prosecution Function and Defense Function 4-5.1 (a), at 197 (3d ed 1993); ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2 (f), at 116 (3d ed 1999).