[908 NYS2d 565]

The People of the State of New York, Plaintiff, v Claudio Picca, Defendant.

Supreme Court, Kings County, October 5, 2010

**APPEARANCES OF COUNSEL**

*Lynn W.L. Fahey*, New York City, for defendant. *Charles J. Hynes, District Attorney (Shulamit Rosenblum Nemec* of counsel), for plaintiff.

**OPINION OF THE COURT**

JO ANN FERDINAND, J.

By notice of motion dated March 17, 2010, the defendant moves to vacate judgment pursuant to CPL 440.10 (1) (h) on the ground that he was denied his right to due process when he pleaded guilty in exchange for the promise of drug treatment but was never placed in a treatment program that could adequately address his mental health needs. In supplemental papers dated April 13, 2010, he asserts an additional ground of relief pursuant to CPL 440.10 (1) (h), claiming that he was denied his Sixth Amendment right to the effective assistance of counsel when his attorney failed to advise him of the deportation consequences of his plea as required by *Padilla v Kentucky*.[1] In opposition, the People argue that the defendant's motion should be summarily denied because the State fulfilled its obligations under the plea bargain, and the defendant has failed to demonstrate that he would not have pleaded guilty if adequately represented. In the alternative, the People argue that pursuant to CPL 440.30 (3), (5) and (6), the defendant

---

1. 559 US —, 130 S Ct 1473 (Mar. 31, 2010).

should be required to prove at a hearing any material disputed facts by a preponderance of the evidence.

On April 17, 2001, the defendant was arrested after the police allegedly observed him sell a quantity of heroin to an apprehended other. Upon his arrest, he stated in substance, "I'll be honest with you. I've got three bundles in my underwear." A subsequent search of his person resulted in the recovery of 32 glassine packets of heroin and $280. At the precinct, he stated in substance, "This is the money I got for selling drugs. I'm guilty. I'm sorry but I'm doing this to support my habit."

On August 6, 2001, represented by George Nieves, Esq., now deceased, the defendant entered a plea of guilty to attempted criminal sale of a controlled substance in the third degree (Penal Law §§ 110.00, 220.39 [1]) with the understanding that his sentence would be deferred pending his participation in the Kings County District Attorney's Drug Treatment Alternative-to-Prison Program (DTAP). (Barros, J.) Pursuant to his DTAP agreement, the defendant would be monitored by Treatment Alternatives to Street Crime (TASC) and was required to complete drug treatment, avoid rearrest, and maintain full compliance with the conditions imposed by the court. If he fully complied with the mandate, he would be permitted to withdraw his guilty plea and the indictment would be dismissed. Alternatively, if he failed to fully complete the treatment program, he would be sentenced as a second felony offender to an indeterminate term of 4 to 8 years in prison.

On August 20, 2001, the defendant was released from custody and placed in treatment at Damon House, where he successfully completed the residential portion of the program. He was then enrolled at Bridge Back to Life (BBL) for aftercare. Within a couple of months, he started using drugs again. He was referred to Seafield Center for rehabilitation and then returned to BBL. He relapsed again and failed to report to TASC or court. A warrant was ordered for his arrest and, on January 23, 2004, he was returned to court by the police and remanded.

On May 5, 2004, the defendant was given another opportunity at treatment and placed at Palladia, where he was once again able to complete the residential portion of the program. When enrolled in aftercare, the defendant again relapsed on cocaine and failed to report to the aftercare program as required. On May 4, 2005, he was remanded. It was during this period of incarceration that a detainer was lodged against the defendant by the Immigration and Customs Enforcement Unit, effectively ending any further chances at treatment.

On September 20, 2005, just before the imposition of sentence, the defendant, represented by Michael Kusevitsky, Esq., made an oral application before this court to vacate the plea on the ground that the defendant was unaware of the immigration consequences of his plea at the time that it was entered.[2] Based on the law as it existed at the time,[3] the application was summarily denied and the defendant was sentenced to the minimum indeterminate term of 3 to 6 years' imprisonment. (Ferdinand, J.)

 The defendant now argues that the People failed to fulfill the promise that induced him to enter a guilty plea: specifically, the implicit promise to provide a fair and reasonable opportunity for him to overcome his addiction. He claims that the drug treatment programs in which he was placed did not adequately address the mental health issues underlying his addiction. In response, the People argue that, through numerous and various drug treatment programs, the defendant was provided a reasonable opportunity to overcome his addiction and successfully complete DTAP.

The disposition of criminal charges through agreements made between prosecutors and defendants is "essential" and "highly desirable" to the administration of the justice system (*Santobello v New York*, 404 US 257, 260-261 [1971]). Recognition of promises that make up those agreements comports with due process and the fairness entitled to each defendant (*People v Danny G.*, 61 NY2d 169 [1984]). Where a defendant has been induced to plead guilty based upon a promise of the prosecutor, such promise "must be fulfilled" (*Santobello* at 262). "[F]ailure . . . to fulfill a promise requires either that the plea of guilty be vacated or the promise fulfilled" (*People v Selikoff*, 35 NY2d 227, 239 [1974]). To assure certainty in the process, "all relevant terms of a plea agreement" must be placed upon the record and terms "not appearing on the record, [are] entitled to no recognition." (61 NY2d at 174.) Accordingly, the explicit terms of a plea agreement create a duty upon both the People and the defendant. Moreover, the parties are only bound to fulfill those

---

**2.** Notably, at no time prior to this motion was an argument made with regard to the adequacy of the treatment received by the defendant.

**3.** Before *Padilla*, an attorney in New York had no affirmative duty to inform a defendant about the immigration consequences of a guilty plea (*People v Ford*, 86 NY2d 397, 404-405 [1995]), and an attorney could be considered ineffective only for providing incorrect advice about immigration consequences (*People v McDonald*, 1 NY3d 109, 115 [2003]), a claim not made in the present case.

explicit terms of the agreement and are not bound to fulfill implied results.

The defendant claims that, in fulfilling their promise, the People have an implied obligation to tailor the treatment program to meet his "reasonable expectations" (mem of law at 2). However, contrary to this claim, treatment programs must meet the treatment needs of an individual, not his expectations (*People v Cataldo*, 39 NY2d 578, 580 [1976] ["Compliance with a plea bargain is to be tested against an objective reading of the bargain, and not against a defendant's subjective interpretation thereof"]; *People v Welch*, 129 AD2d 752 [1987] [an objective reading of the plea bargain was susceptible to but one interpretation so defendant's purported misinterpretation of the agreement does not suffice as a reason to vacate his guilty pleas]; *People v Woods*, 192 Misc 2d 590 [2002] [the defendant's claim of a right to a different drug treatment program has no basis]).

In this case, the defendant received what was promised to him. The treatment providers into whose care he was placed were conducive to drug addiction recovery and took into account his needs, including the possibility of existing co-occurring mental disorders. On December 13, 2004, while in Palladia, he was referred for a neuropsychological evaluation during which he acknowledged that "he once was under the care of a psychologist while partaking in outpatient treatment at Seafield. At the time the psychologist diagnosed him as having ADHD and he was subsequently prescribed Straterra" (defendant exhibit K at 2). He "reported that he eventually stopped taking Straterra as he noticed minimal improvement in his symptoms and felt that the medication's side effects negatively impacted his desire to be sexually active" (*id.*). At yet another time, according to the defendant and his wife, he discontinued use upon the advice of a "pharmacist" when he suffered an allergic reaction to one of his medications (defendant aff in reply at 2, ¶ 7, and Anna Picca aff in reply at 1, ¶ 4). There is no claim that he subsequently sought alternative medications to treat his issues or was denied access to mental health providers.

In drug treatment programs, there is a necessary amount of individual responsibility required from each participant. Here, the defendant was provided with numerous opportunities to succeed through various programs and, in fact, was able to complete both residential treatment programs. It was only upon his placement back into the community that he returned to drug abuse. At a minimum, the treatment programs placed him

under the care of a psychologist, referred him for a neuropsychological evaluation, and obtained prescribed medication for him. It was his responsibility to actually take the medication or seek out advice and alternative medications if his prescriptions proved unsuitable. As the defendant's claim is belied by the record, this branch of his motion is denied.

■ The defendant additionally contends that he was denied his Sixth Amendment right to the effective assistance of counsel by his attorney's failure to advise him of the immigration consequences of his guilty plea. He claims that, had he known of these consequences, he would not have pleaded guilty and instead would have proceeded to trial. He asserts that, as a result of his attorney's error, his plea was not knowing, intelligent, and voluntary. In opposition, the People argue that the defendant has failed to demonstrate that he would not have pleaded guilty if adequately represented and, therefore, has not established the necessary prejudice for a finding of ineffective assistance of counsel.

In order to show that counsel's assistance was ineffective, a defendant must satisfy a two-prong test set forth in *Strickland v Washington* (466 US 668 [1984]). The first prong of the *Strickland* test requires a defendant to show that his counsel's "representation fell below an objective standard of reasonableness" (*id.* at 688). In *Padilla*, the United States Supreme Court held that counsel's failure to inform a client of the deportation consequences of a conviction "clearly satisfies the first prong of the *Strickland* analysis" (*Padilla,* 559 US at —, 130 S Ct at 1484). The Court held that when the deportation consequences of a guilty plea are "succinct, clear, and explicit," counsel has a duty to inform the client about those consequences (559 US at —, 130 S Ct at 1483; *see People v Bennett*, 28 Misc 3d 575 [2010] [the Sixth Amendment requires criminal defense attorneys to advise their noncitizen clients if there is a risk of deportation as a consequence of a conviction]). In the instant case, although there is no claim that counsel was aware of the defendant's immigration status, assuming that this fact could be established, the first prong of the *Strickland* analysis would be satisfied.

To satisfy the second prong of *Strickland*, a defendant must prove that he was prejudiced by counsel's failure to inform him of the deportation consequences of his guilty plea. He must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been dif-

ferent" (*Strickland* at 694), and convince the court that a rejection of the plea agreement "would have been rational under the circumstances" (*Padilla*, 559 US at —, 130 S Ct at 1485). Here, the defendant claims that, had he known of the immigration consequences of his plea, he would have gone to trial. Ignoring the complexity of the decision he faced, he contends a plea under these circumstances is absurd because it subjected him to deportation even upon the successful completion of treatment and dismissal of the indictment. With regard to his 1997 conviction for the same offense, he submits the affirmation of his immigration attorney, who states that defendant was not subject to mandatory deportation as a result of that conviction because it occurred during a period for which discretionary relief is available (Fasano aff at 2).

While it is clear that the instant plea placed the defendant at risk of deportation, there is no confirmed evidence that anyone who has ever successfully completed a court mandated treatment program and had the case dismissed and sealed, as would have occurred here, has ever been deported based on the plea alone. On the other hand, the defendant faced certain deportation and an indeterminate prison term of up to $12^{1}/_{2}$ to 25 years if convicted after trial. In that regard, the evidence against him is compelling: the officer who made the arrest observed the defendant make the drug sale; during his arrest, the defendant admitted that he had sold the drugs; and, the defendant was found in possession of an additional quantity of drugs and proceeds admittedly procured from drug sales.[4]

Moreover, crediting the defendant's claim that deportation was not a mandatory consequence of his prior conviction, had deportation proceedings been commenced prior to his plea in this case, there is no guarantee that he would have been granted the discretionary relief to which he claims entitlement. Thus, since 1997, the defendant has been at risk of deportation. The plea in this case merely continued that status.

Those courts that have ordered a hearing to determine if the defendant was prejudiced by counsel's failure to advise of deportation consequences were presented with evidence demonstrating the defendant's concern about such consequences prior to entering a guilty plea (*see People v Williams*, 72 AD3d 1347 [2010] [the defendant initially rejected the People's plea offer,

---

4. Notably, the defendant does not claim innocence or set forth a viable defense.

accepting it only after counsel assured him several times that a guilty plea would not result in deportation]; *Bennett*, 28 Misc 3d at 583). In the present case, the defendant offers no evidence that he was concerned about immigration issues prior to the plea. In fact, he did not show any concern until four years later when the Immigration and Customs Enforcement Unit lodged a detainer against him.[5]

At the time of the plea, the defendant was faced with a difficult choice: accept the plea, successfully complete treatment, and risk immigration consequences; or proceed to trial, likely get convicted and sentenced to a lengthy prison term, and then face mandatory deportation. The only viable alternative for the defendant to attempt to avoid deportation was to accept the plea agreement and enter the DTAP program. As the defendant concedes in support of his previous claim, it was "obvious" that the "DTAP plea was the most appropriate option for [him]" (attorney aff in support of motion at 7).

Consequently, the defendant has not shown that his defense was prejudiced by his counsel's failure to inform him of the deportation consequences of his guilty plea. Therefore, his counsel's professional error did not deprive the defendant of effective assistance of counsel.

Based on the foregoing, the defendant's motion to vacate judgment is summarily denied.

---

**5.** Notably, no detainer was lodged during the defendant's prior periods of incarceration.