OPINION OF THE COURT
Laura A. Ward, J.
The defendant, initially charged with criminal sale of a controlled substance in the third degree, in violation of Penal Law § 220.39 (1), and criminal possession of a controlled substance in *914 the third degree, in violation of Penal Law § 220.16 (1), pleaded guilty to criminal possession of a controlled substance in the seventh degree, in violation of Penal Law § 220.03. The defendant moves pursuant to Criminal Procedure Law § 440.10 to vacate the judgment of conviction on the grounds that neither his attorney nor the court advised him of the immigration consequences of his guilty plea and that Criminal Procedure Law § 220.50 (7) deprived him of his constitutional right to due process.[1], [2]
In People v Ford (86 NY2d 397 [1995]), at issue was a court’s responsibility to advise a defendant who is pleading guilty of the deportation consequences of the conviction. The Court distinguished between direct and collateral consequences and held that a court must inform a defendant only of the direct consequences of a conviction. The Court defined a direct consequence as “one which has a definite, immediate and largely automatic effect on defendant’s punishment” and a collateral consequence as “a result peculiar to the individual’s personal circumstances and one not within the control of the court system.” (At 403.) The defendant argues, in light of federal legislation enacted in 1996 making deportation of aliens who are not permanent residents mandatory upon conviction of an aggravated felony, that Ford is no longer controlling in those circumstances in which a defendant pleads guilty to an aggravated felony.
In 1996 the Immigration and Nationality Act was amended to virtually mandate deportation of an alien convicted of a crime that relates to a controlled substance. (8 USC § 1227 [a] [2] [B] [i]; § 1228 [b] [5].) The defendant argues that since deportation of an alien convicted of an aggravated felony is mandatory, deportation is automatic and thus is a direct consequence of a conviction for an aggravated felony.
It would seem natural to assume that when a conviction automatically triggers an event, that event is a direct consequence of that conviction. However, case law makes clear that *915 the automatic occurrence of an event does not, in and of itself, cause the event to be classified as a direct consequence. To determine whether a consequence of a sentence is direct or collateral courts apply a two-part test. First, the court must determine if the consequence is “one which has a definite, immediate and largely automatic effect on the defendant’s punishment.” (People v Ford, supra at 403.) Second, the court must determine if the consequence is imposed by the court or an independent agency. (See, Sanchez v United States, 572 F2d 210, 211 [9th Cir 1977]; People v Ford, supra at 403.) If the consequence is both definite and immediate and imposed by the court, the consequence is considered a direct consequence of the sentence and requires notification to the defendant of the consequence. In Michel v United States (507 F2d 461, 466 [2d Cir 1974]), the court stated that “[w]e do not think that the distinction between a direct and a collateral consequence depends upon the degree of certainty with which the sanction will be visited upon the defendant” and courts have routinely approved plea allocutions which failed to inform the defendant of automatic but collateral consequences of a conviction.
In Moore v Hinton (513 F2d 781 [5th Cir 1975]), a class action suit was brought in federal court seeking injunctive and declaratory relief against members of two agencies in the state of Alabama, as well as an Alabama court. One of the agencies was the Alabama Department of Public Safety. In courts in Alabama, defendants who plead guilty to driving while intoxicated are not advised that as a consequence of their guilty plea the defendant’s driver’s license will be suspended by Alabama Department of Public Safety. In a footnote, the court stated that “[w]hether the suspension is automatic was not stipulated. There is some ambiguity in the record on this point; we need not resolve this ambiguity, however, since our conclusion would be identical in either case.” (Moore at 782 n.) The court, in denying the defendant’s application, held that while pleading guilty to a charge of driving while intoxicated a defendant does not have to be advised that the defendant’s license will be suspended because the suspension results from a separate proceeding instituted by an independent agency and is not a part of the punishment imposed by the court. (Moore at 782-783.)
In Meaton v United States (328 F2d 379 [5th Cir 1964], cert denied 380 US 916 [1965]), the court refused to overturn a conviction based upon a plea of guilty despite the fact that the plea court did not *916 inform the defendant that he would automatically lose his right to vote and to travel out of the country. The court in United States v Crowley (529 F2d 1066 [3d Cir 1976], cert denied 425 US 995 [1976]) held that the automatic termination from employment was a collateral consequence of a guilty plea. In People v Tinort (5 Misc 3d 238 [Sup Ct, NY County 2004]) the court held that parole revocation is not a direct consequence of a plea of guilty because, although the parole revocation is automatic, it is not imposed by the court. In People v Cornejo (11 Misc 3d 127[A], 2006 NY Slip Op 50226[U] [App Term, 1st Dept 2006]) the defendant pleaded guilty to criminal possession of a controlled substance in the seventh degree in violation of Penal Law § 220.03. Despite the fact that, pursuant to Vehicle and Traffic Law § 510 (2) (b) (v), upon conviction of a crime, the defendant’s license is automatically suspended, the court, relying on Ford {supra) stated that “the impact, if any, of the judgment on defendant’s driving record is a collateral, not direct, consequence of his plea since it is ‘peculiar’ to defendant and would ‘generally result from the actions taken by agencies the court does not control.’ ” (People v Cornejo, 11 Misc 3d 127[A], 2006 NY Slip Op 50226[U], *1.)
There are no reported New York cases which address the issue of whether mandatory deportation, enacted pursuant to the 1996 amendment to the Immigration and Nationality Act, is a direct or collateral consequence of a guilty plea. Four federal appeals courts have addressed the issue and have ruled that the mandatory nature of deportation does not alter its status as a collateral consequence of a conviction. “Whether mandatory or merely a possibility, deportation remains an indirect consequence of the plea.” (United States v Fagundes, 194 F3d 1321 [table; text at 1999 WL 759606, *1, 1999 US App LEXIS 23504, *3] [10th Cir 1999].)
The court in United States v Gonzalez (202 F3d 20, 27 [1st Cir 2000]) stated that “[h]owever ‘automatically’ Gonzalez’s deportation — or administrative detention — might follow from his conviction, it remains beyond the control and responsibility of the district court in which that conviction was entered and it thus remains a collateral consequence thereof.” In United States v Amador-Leal (276 F3d 511, 517 [9th Cir 2002], cert denied 535 US 1070 [2002]), the court stated that, after the amendments to the Immigration and Nationality Act, “immigration consequences continue to be a collateral consequence of a plea and the resulting conviction. This means that district courts are not *917 constitutionally required to warn defendants about potential removal in order to assure voluntariness of a plea.”
In El-Nobani v United States (287 F3d 417, 421 [6th Cir 2002], cert denied 537 US 1024 [2002]), the court, noting that a collateral consequence is a consequence that is beyond the control and responsibility of the court in which the defendant was convicted, stated that “the automatic nature of the deportation proceeding does not necessarily make deportation a direct consequence of the guilty plea,” and that “the fact that petitioner was unaware of the deportation consequences of his pleas does not make his pleas unknowing or involuntary.”
The federal courts apply the same two-prong test New York State courts use to determine whether a consequence is direct or collateral. Therefore, I adopt the findings of the federal courts that held deportation to be a collateral consequence of a plea, despite the amendment to the Immigration and Nationality Act mandating deportation. Deportation remains a collateral consequence of a guilty plea under New York State law and the failure to warn a defendant that his plea will subject him to deportation is not a ground upon which to vacate a conviction.
The defendant asserts that CPL 220.50 (7) “properly safeguards the defendant’s constitutional due process rights.” (Defendant’s mem of law at 9.) CPL 220.50 (7) provides, in pertinent part, that
“[p]rior to accepting a defendant’s plea of guilty to a count or counts of an indictment or a superior court information charging a felony offense, the court must advise the defendant on the record, that if the defendant is not a citizen of the United States, the defendant’s plea of guilty and the court’s acceptance thereof may result in the defendant’s deportation . . . The failure to advise the defendant pursuant to this subdivision shall not be deemed to affect the voluntariness of a plea of guilty or the validity of a conviction.”
The defendant argues that by specifically declaring that there is no recourse for a court’s failure to advise a defendant of the immigration consequences of a guilty plea, “the statute constitutes an unconstitutional deprivation of defendant’s due process right to be informed of the direct consequence of his plea of guilty” (mem at 9). However, as discussed above, deportation is a collateral, rather than a *918 direct, consequence of a guilty plea and a defendant who pleads guilty has no constitutional right to be informed of the immigration consequences of the guilty plea. Thus, there exists no constitutional due process right which the statute can deny a pleading defendant.
The motion to vacate the judgment of conviction is denied.

. The People were given an opportunity to respond. As of the date of this decision, the People have not responded.

. Defendant argues in his memorandum of law that the defendant’s plea counsel provided ineffective representation when he affirmatively misrepresented the effect the defendant’s “guilty plea would have on his immigration/ deportation status.” (At 3.) However, in his affidavit (titled “Affirmation”), the defendant’s only claim is that he would not have pleaded guilty had he known that a conviction would subject him to deportation. The defendant has not alleged that such misrepresentation was made nor has he submitted any other evidence which would support this argument. Thus, there is no basis for a claim of ineffective assistance of counsel.