Matter of Marqekah B. (2007 NY Slip Op 51361(U))

[*1]

Matter of Marqekah B.

2007 NY Slip Op 51361(U) [16 Misc 3d 1109(A)]

Decided on July 12, 2007

Family Court, Kings County

Hamill, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 12, 2007

Family Court, Kings County
In the Matter of the Application of St. Vincent's Services, Inc. for the Custody and Guardianship of Marqekah B.
B-33753/06

Appearances:
Megan Eiss-Proctor, Esq. for petitioner
Magovern & Sclafani
111 John Street, Suite 1509
New York, New York 10038
Lori Masco, Esq. as law guardian
Juvenile Rights Division of the Legal Aid Society
111 Livingston Street, 8th Floor
Brooklyn, New York 11201
Gail R. Rich, Esq. for respondent Susan B.
14 Billings Place
Brooklyn, New York 11223

Bryanne A. Hamill, J.
On January 10, 2007, the petitoner, St. Vincent's Services ("petitioner"or the "agency"), filed a motion for summary judgment, pursuant to CPLR R. 3212, alleging that there are no genuine issues of material fact as to whether Marqekah B, born on May 22, 2001, is a severely abused child whose care and custody should be committed to the petitoner, pursuant to Social Services Law ("SSL")§ 384-b 4(e). Susan B. ("respondent mother") has submitted an affidavit [*2]in opposition to the petitioner's motion. Respondent argues that summary judgment is inappropriate as a matter of law, as no hearing was ever held to determine whether diligent efforts to reunite the respondent and the child would be detrimental to the best interest of the child, and thus, that triable issue of fact exists. She further requests this Court deny, or hold in abeyance, the motion insofar as she has filed a motion in the Supreme Court, Criminal Term, to set aside her judgement of conviction, pursuant to Criminal Procedure Law § 440. The law guardian supports the agency's motion, without submitting papers. On March 9, 2007, the Court heard oral argument and granted the agency's motion. This written decision incorporates the Court's findings and analysis.
Background
On January 3, 2006, the Administration for Children's Services (hereinafter "ACS") filed a petition charging the respondent mother with abuse and severe abuse of her daughter, pursuant to Family Court Act ("FCA") §1012 (e)(iii) and SSL§ 384-b 8(a)(ii). The petition alleges that the respondent mother committed or allowed to be committed a sex offense against the subject child, Marqekah B., as defined in Article 130 of the Penal Law.
On March 26, 2006, the respondent mother was convicted of Sexual Abuse in the First Degree in violation of Penal Law §130.65 and Endangering the Welfare of a Child in violation of Penal Law §260.10.The plea minutes reveal that this mother admitted that she engaged in sexual contact with her four-year-old daughter with the intent for her sexual gratification, and knowingly acted in a manner likely to be injurious to her daughter's physical, mental and moral welfare.
On May 5, 2006, ACS filed a motion for summary judgment, asserting, inter alia, that there were no triable issues of fact as to whether Marqekah B. is an abused and neglected child, as defined by section 1012(e) and (f) of the FCA.
On August 3, 2006, this Court granted ACS's motion for summary judgment and found that, by clear and convincing evidence, this mother sexually abused her daughter based upon her plea in Kings County Supreme Court to violation of Penal Law Section 130.65 Sexual Abuse in the First Degree, and that it served the best interests of Marqekah to be placed with ACS into foster care.
On August 25, 2006, ACS moved this Court for an order, pursuant to FCA§1039-b, for a finding that reasonable efforts to reunite the subject child with her mother would not be required due to the respondent's criminal conviction and this Court's subsequent finding of Sexual Abuse, pursuant to Family Court Act §1012(e)(iii), asserting that reasonable efforts to reunite Marqekah with her mother would not be in her best interests and would not likely achieve reunification.
On August 31, 2006, this Court held a permanency hearing, where the agency's goal of adoption was approved. The Court based its decision on the testimony of the mother, the caseworker, and the agency's permanency hearing report with two addendums. This Court found that the respondent has been criminally convicted for the sexual abuse of Marqekah, is currently serving a two-year state prison term, and will not be released for at least another year. Further, the Kings County Supreme Court Justice, who sentenced the respondent, has issued a five-year final order of protection on behalf of Marqekah, which bars all contact and communication between her mother and her until 2011. Marqekah has been placed in a loving, stable pre-adoptive, non kinship foster home since January 2006, with no family member willing [*3]to care for her. After the permanency hearing, the matter was adjourned to September 25, 2006 for oral argument on ACS's 1039-b motion.
On September 25, 2006, this Court granted ACS's 1039-b motion and found by clear and convincing evidence, inter alia, that (1) it would be contrary to the best interest, safety and welfare of Marqekah to require reasonable efforts be made because the respondent mother is incarcerated for her sexual abuse, had admitted to committing oral sodomy on her, and a five-year full stay-away order of protection prohibits all contact between the mother and the child, and (2) that reasonable efforts are not likely to result in reunification because of the mother's state prison term and the Supreme Court's order of protection, which precludes contact until 2011.
On November 2, 2006, the agency filed a petition seeking to terminate this mother's parental rights, and subsequently on January 10, 2007, the agency filed this instant motion for summary judgment, for a finding of severe abuse on the fact-finding portion of the Termination petition.
Issues Presented
The first issue presented is whether this Court must conduct a hearing prior to entering a severe abuse finding, pursuant to SSL §384-b 4(e), insofar as this Court had previously determined that reasonable efforts were not required and the mother was convicted of Sexual Abuse in the First Degree. The second issue is whether the filing of a Criminal Procedure Law ("CPL") §440.10 motion is a sufficient basis for this Court to deny, or to hold in abeyance, the agency's motion for summary judgement for the severe abuse finding, under SSL §384-b 4(e).
Analysis
The Court of Appeals established the appropriateness of summary judgments in neglect and abuse proceedings in Suffolk County DSS V. James M., 83 NY2d 178 (1994). "Summary judgment is designed to expedite all civil cases by eliminating from the Trial Calendar claims which can be properly resolved as a matter of law." Andre V. Pomeroy, 362 NYS2d 313, 133 (1974). "When there is no genuine issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell the trial calendar and thus deny to other litigants the right to have their claims promptly adjudicated." Id. at 133. "Where the moving party has demonstrated that it is entitled to summary judgment, the party opposing the motion must demonstrate by admissible evidence the existence of a triable issue of fact or tender an acceptable excuse for failing to do so,and the submission of a hearsay affirmation by counsel alone does not satisfy this requirement." Zuckerman v. City of New York, 49 NY2d 557 (1980). Unsubstantiated allegations are insufficient to raise a triable issue of fact and will not defeat entry of summary judgment. Matter of Jimmy A., 218 AD2d 734 (2nd Dept. 1995).
The respondent, in opposition, argues that summary judgment is inappropriate because no hearing was ever held to determine whether diligent efforts for reunification would be detrimental to the best interests of the child. The respondent contends that in order for the Court to adequately make a determination whether diligent efforts would be detrimental to Marqekah's best interest, the Court would have to receive in evidence expert testimony and/or other evidence as to what would be in her best interest. In support of her argument, she annexed a copy of a letter from child's therapist, stating that visitation between them should be postponed until further [*4]assessments and therapy. She misplaces reliance upon this Court's prior decision in Matter of Christian W, 9 Misc 3d 1118A (Fam Ct. Kings Co. 2005), where this Court denied summary judgment on a termination of parental rights' case, holding that a hearing was necessary on the issue of whether diligent efforts would be detrimental to the best interest of the children because no 1039-b motion had been previously filed.
Social Services Law §384-b 8(a)(ii) requires that for purposes of this section a child is "severely abused" by his or her parent if . . . a child has been found to be an abused child, as defined FCA §1012(e)(iii), as a result of such parents acts; provided, however, the respondent must have committed or knowingly allowed to be committed a felony sex offense as defined in sections 130 of the penal law . . . and (iv) the agency has made diligent efforts to encourage and strengthen the parental relationship, including efforts to rehabilitate the respondent, when such efforts will not be detrimental to the best interest of the child, and such efforts have been unsuccessful and are unlikely to be successful in the foreseeable future. However, an exception to demonstrating diligent efforts exists where a court has previously determined in accordance with the family court act that reasonable efforts to make it possible for the child to return safely to his or her home are not required. SSL §384-b 8(a)(iv).
On August 3, 2006, this Court entered a finding that the child was abused by the mother, pursuant to FCA §1012(e)(iii), as a result of her criminal conviction for a felony sex offense, PL § 130.65. On September 25, 2006, this Court found, by clear and convincing evidence, that reasonable efforts to make it possible for Marqekah to return safely to her home were not required by the agency. This determination was based upon submission of papers, oral argument and upon consent of the parties, by adopting the August 31st testimony of the case worker and the mother. The adoption of this testimony was requested by respondent's counsel.[FN1] At the permanency hearing, this mother, under oath, admitted that to sexually touching and orally sodomizing her young daughter, while intoxicated; and when asked what made her think of doing that, she simply had no response. [FN2] Further, the respondent pled guilty to Sexual Abuse in the First Degree, with a five-year stay away order of protection barring the mother from all contact and communication with Marqekah. The order of protection was part of the respondent's favorable plea bargain, where she would only have to serve a two-year prison sentence.Although requested, the Supreme Court, based upon the recommendation of the District Attorney's office, would not modify the order of protection to allow even minimal contact or make the order subject to family court.[FN3]
Accordingly, based on these undisputed facts, the Court determined that a hearing on ACS's motion, pursuant to FCA §1039-b, was not necessary. The Court held that the agency had established, by clear and convincing evidence, that reasonable efforts would not be in this child's best interest, are contrary to her health and safety, and would not be likely to result in reunification.
[*5]
The respondent is now seeking to re-litigate the judicial determination previously entered on the 1039-b motion, which is the law of the case. The Court of Appeals in People v. Evans, 94 NY2d 499 (2003) at 503 held "the doctrine of law of the case is a judicially crafted policy that expresses the practice of courts generally to refuse to reopen what has been decided, and is not a limit to their power." "Once a point is decided within a case, the doctrine of law of the case makes it binding not only on the parties, but on the court as well." Dukett v. Wilson, 31 AD3d 865, 867 (3rd Dept. 2006). The proper remedy for a litigant who opposes a judicial order is to file an appeal, pursuant to CPLR §5501, or to file a motion, pursuant to CPLR R. 2221, seeking leave to renew or reargue. No such appeal or motion has been filed.
Accordingly, there is no triable issue of fact which would entitle the respondent to a hearing as to whether she severely abused her daughter, pursuant to SSL §384-b 4(e). The agency has proven, by clear and convincing evidence, that Marqekah is a severely abused child, pursuant to SSL §384-b 8(a)(ii), insofar as her mother was convicted of Sexual Abuse in the First Degree, a finding of abuse has been entered thereupon, and diligent efforts are not required.
The next issue before this Court is whether the respondent's filing of a CPL §440 motion to vacate the criminal conviction is a sufficient basis for either denying, or holding in abeyance, the agency's motion for summary judgment.
In her opposition, the respondent argues that summary judgment is inappropriate because
triable factual issues remain as to whether her daughter, Marqekah, can one day return safely to her. Specifically, the respondent contends that if the Supreme Court grants the CPL §440 motion, the current order of protection will be terminated and replaced by a new one. The respondent claims that, in that event, due process would entitle her to a hearing on whether diligent efforts at family reunification are necessary.
To support her position that the Supreme Court is likely to decide the CPL §440 motion in her favor, the respondent annexed a copy of her notice of motion to vacate judgment, as well as a copy of her affidavit. In her affidavit, the respondent claims that her fundamental state and federal constitutional rights were violated because the Supreme Court justice failed to advise her that a five-year order of protection would prevent her from having any contact with her daughter. In support of her argument, the respondent relies on People v. Catu, 4 NY3d 242 (2005) where the New York Court of Appeals reversed a conviction on the grounds that failure to inform defendant that a determinate sentence included a supervised release component rendered [defendant's] guilty plea unknowing and involuntary. In the alternative, the respondent argues that inasmuch as this Court's determination to excuse efforts at reunification was based, even in part, on the Supreme Court's order of protection, and given the importance of the likelihood of family reunification in deciding whether to terminate parental rights, this Court should at least hold in abeyance the motion for summary judgment until the Supreme Court issues a decision on the CPL §440 motion.
Under Criminal Procedure Law § 440.10(1)(h), whenever a judge enters a conviction based on a guilty plea without first ensuring that the plea was given voluntarily and knowingly, the defendant may move to vacate judgment on the grounds that it was obtained in violation of constitutional rights. The Court of Appeals explained that "the duty of a Judge who accepts a plea is to be conditioned by the circumstances of the specific case; it is not an absolute duty." People v. Francis 38 NY2d 150, 153 (1975). Thus, before accepting a guilty plea, a judge must [*6]consider such factors as "the seriousness of the crime, the competency, experience, and actual participation by counsel, the rationality of the plea bargain, and the pace of the proceedings in the particular court." People v. Harris, 61 NY2d 9,16 (1983), citing People v. Nixon, 21 NY2d 338, 353 (1967). While the Court of Appeals specified that "a trial court judge has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences," it also recognized that "Ya Criminal Court judge is in no position to advise on all the ramifications of a guilty plea personal to a defendant." People v. Ford, 86 NY2d 397, 402, 403 (1995). Hence, there is no requirement that a judge conduct a "pro forma inquisition in each case on the off-chance that a defendant who is adequately represented by counsel may nevertheless not know what he is doing." Harris, 61 NY2d at 16, 17 (1983). Thus, under the law a judge is only required to inform a defendant of the direct consequences of a guilty plea, and has no such duty regarding the collateral consequences of a guilty plea. Catu, 4 NY3d at 243.
The Court of Appeals further held that collateral consequences are "peculiar to the individual and generally result from the actions taken by agencies the court does not control." Catu, 4 NY3d at 243; see El-Nobani v. U.S., 287 F3d 417, 421 (6th Cir.2002), cert. denied, 537 US 1024 (2002), (finding that the Criminal Court had no power or jurisdiction to regulate actions arising within another department, as a justification for finding that it was a collateral consequence of the guilty plea). Likewise,theNew York Criminal Court held that immigration consequences such as deportation remain collateral, as they are not effectuated by the court system itself and are a result that is peculiar to the individual's personal circumstances. People v. DeJesus, 12 Misc 3d 913 (2006).
In the present case, the respondent's filing of the CPL §440 motion does not, in and of itself, constitute a sufficient basis for denying the agency's motion for summary judgment. At the time of oral argument, there had been no ruling as to whether the respondent's state and federal constitutional rights were in fact violated by the judge's failure to inform her of the overall consequences that her guilty plea might have on her Family Court child abuse case. Therefore, it would have been premature for this Court to consider the outcome of the CPL §440.[FN4]
However, from a review of the applicable case law, this mother would not be likely to prevail on her CPL §440 motion because the consequence of her criminal conviction in Family Court is clearly a collateral consequence of her guilty plea, and therefore, the Supreme Court's failure to inform her of such a consequence would not be a ground for vacating the conviction. Unlike Catu, 4 NY3d at 243, where the defendant's determinate sentence entailed a mandatory post release supervision, here, the respondent's legal relationship with her daughter is entirely peculiar to her. In addition, it is action brought by an outside agency which seeks to terminate [*7]her parental rights, altering her legal relationship to her daughter, of which the Family Court has original jurisdiction. As such, this action is beyond the jurisdiction of the Supreme Court, where the respondent was convicted. See El-Nobani v. U.S., 287 F3d at 421. Finally, Family Court civil child abuse and neglect proceedings are generally beyond the knowledge of criminal courts, and to require them to be well informed on the overall consequences that the criminal convictions would have on Family Court cases would be unreasonable and impractical.
Therefore, the effect of the criminal conviction and the full stay away order of protection on the agency's determination to seek to terminate the mother's parental rights is a collateral consequence of her criminal conviction, of which the Supreme Court would have no duty to inform her.
With respect to the request to hold this Family Court case in abeyance pending the criminal motions, there is no requirement that Family Court delay its case, pending the outcome of collateral or concurrent criminal cases, even if the parties and the issues are similar. Under FCA §1014(c), concurrent proceedings in the Family Court and Criminal Court are expressly authorized. However, the Family Court may, in the exercise of sound discretion, decide to hold its proceedings in abeyance pending the conclusion of a criminal prosecution. American Life Ins. Co. v. Stewart, 300 US 203, 215-216 (1937). In considering whether to hold a case in abeyance, the Court weighs the benefits derived from holding one suit in abeyance against the hardships resulting from it, and then ascertains a balance between both. Id.
In this child abuse matter, whether the Supreme Court or Appellate Division grants or denies the respondent's CPL §440 motion, the likelihood of family reunification would not substantially increase. Even assuming that the Supreme Court, or Appellate Division if an appeal is filed, was to vacate the judgment, a trial would be scheduled with continued temporary orders of protection. Absent a plea bargain, the respondent might be facing a longer prison sentence.
Thus, having carefully considered the competing interests at stake, and having weighed the benefits against the hardships that would result, and in light of the State's strong interest in promptly achieving permanency goals for foster care children, this Court denies mother's request to hold this case in abeyance, pending respondent's criminal motions and appeals. In this abuse case, the agency has an obligation to seek to achieve permanency for this child, of which the goal of adoption was approved. Currently, all contact between mother and child is barred, until 2011. Marqekah is only five years old, and has been residing in a loving, stable, pre-adoptive non kinship foster home for over a year prior to the filing of this termination petition. Permanency for this abused child must be paramount. The Court of Appeals in Matter of Marino S., 100 NY2d 361, (2003) at 372 held:
It has long been the public policy of this State to keep biological families together and to require foster care agencies to exercise diligent efforts to reunite abused and neglected children with the birth parents, once rehabilitated. That critical goal remains, and careful attention must be paid to ensure it is achieved where possible. But when a child's best interest is endangered, such objectives most yield to the State's paramount concern for the child's health and safety. In such extreme cases, the State's strong interests in avoiding extended foster care limbo and expediting permancy planning may properly excuse the futile exercise of making efforts toward reuniting a family that, in the end, should not and will not be reunited.
Accordingly, the agency's motion for summary judgment is granted to the extent a finding of [*8]severe abuse is entered, pursuant to Social Services Law § 384-b 4(e). The case is adjourned for a dispositional hearing where the agency has the burden to demonstrate, by clear and convincing evidence, that it serves Marqekah's best interest that her mother's parental rights be terminated, and her custody and guardianship be committed to ACS and the foster care agency for purposes of consenting to her adoption, pursuant to Social Services Law §384-b 8(f). All parties shall be prepared to proceed with all witnesses, and the respondent shall be physically produced from Albion State Prison, on September 11, 2007.
The foregoing constitutes the decision and Order of this Court.
E N T E R:
______________________________
HON. BRYANNE A. HAMILL
Judge of the Family Court
Footnotes

Footnote 1: See, 9/25/06 transcript, p. 6 lines 18-24 

Footnote 2: See, 8/31/06 transcript, pgs. 63-64 and pgs. 81-86

Footnote 3: See, 9/25/06 transcript, pgs. 9-12 

Footnote 4: On April 24, 2007 the Honorable Martin J. Murphy denied the respondent's CPL §440.10 motion. The Court found that an order of protection was not new to the defendant's case, as there had been three prior orders of protection issued and the defendant and her attorney were fully aware of its mandates and conditions. The Court also found that the defendant was at all times represented by counsel and that she was afforded ample opportunity to question or contest any of the sentence conditions but did not do so. Defendant also acknowledged and signed the order of protection in open court in the presence of her attorney.