[905 NYS2d 887]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff/Respondent,
v AMADOU KABRE, Defendant/Petitioner.

Criminal Court of the City of New York, New York County, July 22, 2010

## APPEARANCES OF COUNSEL

*Amadou Kabre*, defendant/petitioner pro se. *Cyrus R. Vance, Jr., District Attorney*, New York City (*Lauren Angelo* of counsel), for plaintiff/respondent.

### OPINION OF THE COURT

ABRAHAM CLOTT, J.

Petitioner seeks relief from three misdemeanor convictions of trademark counterfeiting on various grounds including that his counsel was ineffective for not advising him of the immigration consequences of his pleas. This court holds that the rule announced in *Padilla v Kentucky* (559 US —, 130 S Ct 1473 [2010]), that counsel's failure to advise a defendant about the immigration consequences of a guilty plea can constitute ineffective assistance of counsel, is not to be applied retroactively on collateral review of misdemeanor convictions.

Introduction

Petitioner seeks orders pursuant to CPL 440.10 to vacate three judgments. The argument requiring the most attention is that prior counsel was ineffective for not giving petitioner any advice at all about the potential immigration consequences of his convictions. Although in *Padilla* the Supreme Court held that counsel is ineffective for failing to give such advice, the decision is contrary to a prior ruling of the New York Court of Appeals, which had held that failure to give advice on immigration consequences is not ineffective because these consequences are collateral to the conviction itself (*People v Ford*, 86 NY2d 397, 404 [1995]). Thus these cases present the question whether claims of ineffective assistance are to be judged under the standard announced in *Padilla* or the prior New York rule of *Ford*. As explained below, a petitioner making a collateral attack on a conviction can take advantage of a new rule of constitutional criminal procedure only under limited circumstances, circumstances not present here. Accordingly, petitioner's claims will be adjudicated with reference to the law in effect at the time of the

representation now attacked as ineffective, the standard of *People v Ford.*

Petitioner has made contradictory claims that his lawyers both told him nothing at all about the potential immigration consequences of his pleas and that they each advised him incorrectly that there would be no consequences. Even before *Padilla,* New York law clearly required that any advice given by defense counsel about immigration consequences not be incorrect (*People v McDonald,* 1 NY3d 109 [2003]). As explained below, this court holds that the *Padilla* rule requiring counsel to give advice (rather than say nothing) is not to be applied retroactively, at least with respect to a misdemeanor conviction. Unlike the immigration consequences attendant upon conviction of a felony, the immigration consequences of a misdemeanor conviction are often unclear.[1] This court also holds that petitioner's claim under established New York law regarding any advice he was given does not require a hearing. The petition for CPL article 440 relief is accordingly denied.

Background

In 2002, 2003, and 2004, petitioner, a citizen of Burkina Faso, was arrested and charged with trademark counterfeiting in the third degree (Penal Law § 165.71). Each case was ultimately resolved by petitioner pleading guilty to the charge and being sentenced as promised to a conditional discharge with community service. These convictions were petitioner's seventh, eighth, and ninth for trademark counterfeiting. No appeals were taken from the convictions. Petitioner filed these claims after he was taken into immigration custody, which was when he discovered that his convictions rendered him deportable. Petitioner has not been deported and is no longer being held by the immigration authorities.

Petitioner's Claims

## I. Claim under *Padilla v Kentucky*

Petitioner avers that none of his prior counsel told him about the adverse immigration consequences of a guilty plea and that

---

**1.** In *Padilla,* the Court stated: "In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction" (*Padilla,* 559 US at —, 130 S Ct at 1483). The Court also acknowledged that immigration law can be "complex" and that there are "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain" (*id.*). Such is often the case with misdemeanor convictions.

he would have exercised his right to trial had he known that the convictions could lead to his deportation. He contends that counsel was ineffective for failing to inform him of these consequences. When petitioner filed these motions, the Supreme Court had not yet decided *Padilla*; petitioner nevertheless argued that all his prior counsel were ineffective because they did not advise him of the immigration consequences of his plea and petitioner sought to "preserve the *Padilla* issue in any event."

*Padilla* was an appeal from a ruling by the Supreme Court of Kentucky denying postconviction relief without a hearing (*Padilla*, 559 US —, 130 S Ct at 1478). The defendant was a lawful permanent resident of the United States who had pleaded guilty to a drug offense (*Padilla*, 559 US at —, 130 S Ct at 1477). The defendant claimed to the Kentucky courts that his counsel told him that his 40 years of residence in the United States precluded any adverse immigration consequences from the guilty plea; in fact the conviction was a ground for mandatory deportation (*Padilla*, 559 US at —, 130 S Ct at 1478). Padilla also alleged that had he known the immigration consequences of the plea he would have exercised his right to trial (*Padilla*, 559 US at —, 130 S Ct at 1478). The Supreme Court of Kentucky assumed that Padilla's allegations were true, but denied him postconviction relief without a hearing (*Padilla*, 559 US at —, 130 S Ct at 1478). The Kentucky Court held that the Sixth Amendment guarantee of effective assistance of counsel does not protect a defendant from erroneous advice about the collateral consequences of a guilty plea (*Padilla*, 559 US at —, 130 S Ct at 1478).

The United States Supreme Court reversed and held that failure to advise a defendant on the immigration consequences of a plea can be ineffective assistance of counsel requiring that the conviction be set aside (*Padilla*, 559 US at —, 130 S Ct at 1484). The Court emphasized that as a result of changes in immigration law the " 'drastic measure' of deportation or removal . . . is now virtually inevitable for a vast number of non-citizens convicted of crimes" (*Padilla*, 559 US at —, 130 S Ct at 1478 [citation omitted]). Moreover, because of the unique nature of deportation, the distinction between direct and collateral consequences relied upon by the lower courts to delineate the areas where the Sixth Amendment requires effective assistance of counsel was "ill-suited" to evaluating claims about the specific risk of deportation (*Padilla*, 559 US at —, 130 S Ct at 1482).

The Court concluded that the standard of *Strickland v Washington* (466 US 668 [1984]), which requires counsel to provide "reasonable professional assistance" to defendants, applies to advice regarding deportation without regard to whether these consequences are characterized as "collateral" or "direct" or whether counsel failed by giving incorrect advice or failed by giving no advice at all (*Padilla*, 559 US at —, —, 130 S Ct at 1481, 1484).

*Padilla* was decided well after the convictions at issue here became final in 2005.[2] A Supreme Court decision rendered after a conviction has become final can be considered on collateral review only in limited circumstances. Under both federal and New York law, a new decision can be considered on collateral review only if the decision applied settled law to a new set of facts or, if the decision announced a new rule, only if that rule establishes that the defendant's conduct was not criminal at all (and therefore not subject to prosecution—a circumstance clearly not present here) or if the rule is a "watershed" principle so fundamental to the fair administration of justice in the adjudication of innocence or guilt that its retroactive application is required (*Teague v Lane*, 489 US 288, 311 [1989, O'Connor, J., plurality op]; *People v Eastman*, 85 NY2d 265, 275-276 [1995]). This court concludes that in *Padilla* the Supreme Court announced a new rule of criminal procedure rather than applied settled law to a new set of facts and that the *Padilla* rule is not a "watershed" change that must be applied retroactively to cases on collateral review.

A. New Rule Jurisprudence

Petitioner would be entitled to relief under *Padilla* if that decision resulted from an application of settled law and did not announce a new rule (*Teague v Lane*, 489 US at 301; *People v Eastman*, 85 NY2d at 275-276).[3] Indeed, at least two reported decisions have held that *Padilla* is to be applied retroactively because it did not announce a new rule (*United States v Hubenig*, 2010 WL 2650625, 2010 US Dist LEXIS 80179 [ED Cal

---

**2.** The most recent conviction at issue was in 2004. A conviction is final once the defendant has exhausted his right to appeal (*Teague v Lane*, 489 US 288, 298 [1989]). Here, petitioner never filed appeals; his time to do so expired 13 months after his plea and sentence (CPL 460.10, 460.30).

**3.** In *Danforth v Minnesota* (552 US 264 [2008]), the Supreme Court held that *Teague* does not require state courts to follow federal rules of retroactivity in state court collateral proceedings. The New York Court of Appeals adopted the standards set forth in *Teague* in *People v Eastman* (85 NY2d at 275-276); *Teague* therefore governs analysis of retroactive application of Supreme Court decisions on collateral review.

2010]; *People v Bennett*, 28 Misc 3d 575 [Crim Ct, Bronx County 2010]). The Supreme Court has defined a "new" rule as one that breaks new ground or imposes a new obligation on the states or the federal government; a rule is also new if the result was not "*dictated* by precedent existing at the time the defendant's conviction became final" (*Butler v McKellar*, 494 US 407, 412 [1990] [internal quotation marks omitted]; *see also Teague v Lane*, 489 US at 301; *People v Eastman*, 85 NY2d at 275-276). Petitioner can prevail here only if a New York court in 2005 (when the last conviction at issue here became final) would have been required by controlling United States Supreme Court precedent to rule that failure to discuss the immigration consequences of a guilty plea was ineffective assistance of counsel.

## 1. The State of the Law in 2005

### a. Supreme Court and Federal Court of Appeals Decisions on Defense Counsel's Obligations to the Noncitizen Defendant

Before the 2010 decision in *Padilla*, the Supreme Court had never held that defense counsel in a criminal case had any particular responsibility to advise an alien defendant of the potential consequences of a conviction under the immigration laws. Indeed, the *Padilla* Court cited no federal decisional precedent at all in support of its holding (*see Padilla*, 559 US at —, 130 S Ct at 1481-1482). Rather, the Court cited standards of practice and practice guides (*Padilla*, 559 US at —, 130 S Ct at 1482-1484). To the extent Supreme Court precedent had addressed the procedural rights of aliens under immigration law, the Court had held that those rights were limited. For example, in *INS v Lopez-Mendoza* (468 US 1032, 1038 [1984]), the Court had rejected the argument that deportation proceedings are subject to the various protections afforded defendants in criminal trials because such proceedings are civil.

The most the Supreme Court had stated about defense counsel's role in a criminal case to advise about immigration consequences was to observe in dicta that competent counsel inform a defendant about the immigration consequences of a conviction (*INS v St. Cyr*, 533 US 289, 322-323 [2001]). The Court's view that competent counsel consider immigration consequences and take them into account was a basis for its holding in *St. Cyr* that the statutory abrogation of the possibility of an avenue for discretionary relief from deportation was not to be applied retroactively (*St. Cyr*, 533 US at 321-324). It would be unfair, reasoned the Court, to bar an application for

discretionary relief based on a statute enacted after a guilty plea when competent defense counsel presumably took the possibility of discretionary relief into account both in negotiating a plea bargain that would preserve that possibility and in advising the defendant to accept the disposition (*id.* at 323-324). This reasoning does give some support to the view that the *Padilla* rule is not new but does not compel the conclusion that in 2001 the Supreme Court intended to suggest that any failure to give advice about immigration consequences fell below the Sixth Amendment standard. A fundamental sense of fairness may have militated in favor of not applying a new statute retroactively when competent counsel likely took the old law into account when giving advice. The Constitution may not necessarily, however, have been viewed as requiring a conviction to be set aside for failure to have given that advice.

In the absence of any clear signal from the Supreme Court to the contrary, every federal circuit court of appeals to consider the issue held that deportation, however onerous, however severe a consequence of a guilty plea, was nevertheless a collateral consequence of the conviction and that defense counsel was not ineffective for failing to advise about deportation or any other potential immigration consequence of a criminal conviction (*see United States v Gonzalez*, 202 F3d 20 [1st Cir 2000]; *United States v Santelises*, 476 F2d 787 [2d Cir 1973]; *United States v Del Rosario*, 902 F2d 55 [DC Cir 1990]; *United States v Yearwood*, 863 F2d 6 [4th Cir 1988]; *United States v Banda*, 1 F3d 354 [5th Cir 1993]; *United States v George*, 869 F2d 333 [7th Cir 1989]; *United States v Fry*, 322 F3d 1198 [9th Cir 2003]; *Broomes v Ashcroft*, 358 F3d 1251 [10th Cir 2004]; *United States v Campbell*, 778 F2d 764 [11th Cir 1985]).[4] The circuit courts adhered to this view even after Congress, in the Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, expanded the number of offenses which rendered an alien deportable and abolished the power of the United States Attorney General to grant discretionary relief from deportation (*Broomes v Ashcroft*, 358 F3d at 1256-1257). Until the Supreme Court decided *Padilla*, the federal rule was clearly that the Sixth Amendment right to effective assistance of counsel as explicated in *Strickland* did not require defense counsel to give

---

4. In *El-Nobani v United States* (287 F3d 417 [6th Cir 2002]), the court held that deportation is a collateral consequence of a conviction but did not discuss ineffective assistance of counsel in so doing.

any advice about immigration consequences at all, even in the many cases in which the conviction would lead to mandatory deportation.

b. Non-New York State Court Decisions on Defense Counsel's Obligations to the Noncitizen Defendant

The overwhelming majority of state courts held that counsel's failure to warn a defendant of the immigration consequences of a plea was not ineffective assistance of counsel. These courts reasoned, as did the federal circuit courts noted above, that counsel had no obligation to apprise a defendant of the collateral consequences of a guilty plea and held that immigration consequences were collateral to the plea itself, as they were not within the control of the court which accepted the plea (*see Rumpel v State*, 847 So 2d 399 [Ala Crim App 2002]; *Tafoya v State*, 500 P2d 247 [Alaska Sup Ct 1972]; *State v Rosas*, 183 Ariz 421, 904 P2d 1245 [Ct App 1995]; *Christie v State*, 655 A2d 306 [Del Sup Ct 1994]; *State v Ginebra*, 511 So 2d 960 [Fla Sup Ct 1987]; *People v Huante*, 143 Ill 2d 61, 571 NE2d 736 [1991]; *State v Ramirez*, 636 NW2d 740 [Iowa Sup Ct 2001]; *State v Muriithi*, 273 Kan 952, 46 P3d 1145 [2002]; *Commonwealth v Fuartado*, 170 SW3d 384 [Ky Sup Ct 2005]; *State v Montalban*, 810 So 2d 1106 [La Sup Ct 2002]; *People v Davidovich*, 238 Mich App 422, 606 NW2d 422 [1999], *affd* 463 Mich 446, 618 NW2d 579 [2000]; *Alanis v State*, 583 NW2d 573 [Minn Sup Ct 1998]; *State v Zarate*, 264 Neb 690, 651 NW2d 215 [2002]; *Barajas v State*, 115 Nev 440, 991 P2d 474 [1999]; *State v Dalman*, 520 NW2d 860 [ND Sup Ct 1994]; *Commonwealth v Frometa*, 520 Pa 552, 555 A2d 92 [1989]; *Nikolaev v Weber*, 705 NW2d 72 [SD Sup Ct 2005]; *Bautista v State*, 160 SW3d 917 [Tenn Ct Crim App 2004]; *Perez v State*, 31 SW3d 365 [Tex Ct App 2000]; *State v Rojas-Martinez*, 125 P3d 930 [Utah Sup Ct 2005]; *State v Martinez-Lazo*, 100 Wash App 869, 999 P2d 1275 [2000]; *State v Santos*, 136 Wis 2d 528, 401 NW2d 856 [1987]). Those few courts which held otherwise rejected the distinction between direct and collateral consequences maintained by other courts because deportation is such a severe penalty (*Williams v State*, 641 NE2d 44 [Ind Ct App 1994]; *State v Paredez*, 136 NM 533, 101 P3d 799 [2004]).[5] The Indiana court stated: "We do not believe that an attorney's duties to a client are limited by a

---

5. Slightly different reasoning was followed by other courts. For example in *People v Pozo* (746 P2d 523 [1987]), the Colorado Supreme Court held that if counsel had reason to believe that a defendant was an alien there was a duty to investigate the immigration consequences of a conviction. The Califor-

bright line drawn between the direct consequences of a guilty plea and those consequences considered collateral" (*Williams v State*, 641 NE2d at 49).

In *Padilla* the Court essentially adopted the minority approach of the courts of Indiana and New Mexico when it held that deportation "as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation" (*Padilla*, 559 US at —, 130 S Ct at 1482). Yet, in light of the weight of state authority to the contrary, it cannot be said that a court confronted in 2005 with the claims petitioner here now makes would have been constrained by precedent to hold that counsel had been ineffective for failing to discuss with him the immigration consequences of a plea. Indeed, the only support for such a rule was a small minority of state courts outside New York.

c. New York Decisions on Defense Counsel's Obligations to the Noncitizen Defendant

A New York state court in 2005 would not, however, have had to consult other jurisdictions for guidance on how to dispose of petitioner's claim. In *People v Ford* (86 NY2d at 403), the Court of Appeals held:

> "[C]ourts have drawn a distinction between consequences of which the defendant must be advised, those which are 'direct,' and those of which the defendant need not be advised, 'collateral consequences' . . . . A direct consequence is one which has a definite, immediate and largely automatic effect on a defendant's punishment . . . [t]he failure to warn of such collateral consequences will not warrant vacating a plea because they are peculiar to the individual and generally result from actions taken by agencies the court does not control." (Citations omitted.)

All four departments of the Appellate Division followed this rule (*see People v Klein*, 11 AD3d 959 [4th Dept 2004]; *People v Hall*, 16 AD3d 848 [3d Dept 2005]; *People v Boodhoo*, 191 AD2d 448

nia Supreme Court did not decide whether failure to give any advice on the immigration ramifications of a plea was ineffective assistance but did hold that the "collateral" nature of such ramifications did not foreclose an ineffective assistance claim (*In re Resendiz*, 25 Cal 4th 230, 19 P3d 1171 [2001]).

[2d Dept 1993]). Specifically, the First Department followed *Ford* and held that deportation is a collateral consequence of a criminal conviction (*People v Agero*, 234 AD2d 94 [1st Dept 1996]). As did the federal circuit courts, New York courts adhered to the collateral consequences doctrine even after the 1996 changes to the immigration law made deportation automatic upon conviction for many offenses (*see e.g. People v DeJesus*, 12 Misc 3d 913 [Crim Ct, NY County 2006]). The New York courts did recognize that counsel could be ineffective by giving advice that was wrong (*see People v McDonald*, 1 NY3d 109 [2003]), but did not require counsel to come forward and give any particular advice at all.

## 2. *Padilla* as a New Rule

Decisional law in 2005 clearly did not require defense counsel in New York to give any advice about immigration consequences. A recent decision of the Bronx County Supreme Court, however, held that the federal constitutional right to effective assistance of counsel is not new at all, and that *Padilla* merely applied prior Supreme Court precedent, such as *Strickland*, to a new set of facts (*Bennett*, 28 Misc 3d at 579; *accord United States v Hubenig*, 2010 WL 2650625, *5-8, 2010 US Dist LEXIS 80179, *12-21 [2010]). Despite *Bennett* and *Hubenig*, and despite the clear applicability of *Strickland* in 2005, this court concludes that *Padilla* articulated a new rule.

The Supreme Court has acknowledged that it is "often difficult to determine when a case announces a new rule" (*Teague*, 489 US at 301). The courts have looked to several factors to determine whether a decision announced a new rule or merely applied settled law to a new set of facts. One of the most common tests applied by the Supreme Court itself and the one followed by the New York State Court of Appeals is to consider whether the result in the case was "dictated" by precedent (*Teague*, 489 US at 301; *Butler v McKellar*, 494 US at 412; *Saffle v Parks*, 494 US at 488; *People v Eastman*, 85 NY2d at 275-276). A New York court confronted with petitioner's claim in 2005 would have found no Supreme Court case holding that counsel's failure to apprise a defendant of the immigration consequences of a plea is ineffective assistance or that the distinction between direct and collateral consequences was not relevant to analyzing the scope of the Sixth Amendment right to effective assistance of counsel. No precedent from the federal circuit courts mandated such advice or rejected that distinction. The great majority of state courts held that counsel had no duty to give

such advice; these courts applied the distinction between direct and collateral consequences in reaching their decisions. *Padilla* rejected the majority analysis and this rejection was not dictated by precedent on the federal or state level.

"Dictated by precedent" is not the only formulation of the rule. Another factor is whether the Supreme Court has overruled past authority: a decision which overrules a prior case is obviously a new rule (*Butler v McKellar*, 494 US at 412). *Padilla* did not, of course, overrule any prior Supreme Court decision because there were no prior decisions which held that the Sixth Amendment guarantee of effective assistance of counsel applied to advice on a consequence hithertofore considered collateral. The decision in *Padilla* effectively did overrule decisions from 10 of the federal circuit courts and 23 states, and certainly has in this sense established a new rule in those jurisdictions.

Yet another formulation of the test to determine whether a rule is new was propounded by the Supreme Court in *Beard v Banks* (542 US 406 [2004]). The Court, applying *Teague*, stated that the issue is whether, at the time of the conviction, the "unlawfulness of [defendant's] conviction was apparent to all reasonable jurists" (*id.* at 413). Here, it cannot be said that the "unlawfulness" of petitioner's conviction would have been apparent to all reasonable jurists, as all of the jurists of many federal circuit courts and state courts, including the highest court of New York, rejected challenges to convictions on the precise ground petitioner raises here.

The *Padilla* holding was therefore not dictated by precedent (*Teague*, 489 US at 301; *Eastman*, 85 NY2d at 275-276), the decision did overrule substantial prior precedent (*Butler v McKellar*, 494 US at 412), and the unlawfulness of petitioner's conviction, in 2005, could not have been apparent to all reasonable jurists (*Beard v Banks*, 542 US at 413). This court has found no decision of the United States Supreme Court holding that one of its decisions overruling a majority of the lower federal courts resulted from a mere application of settled law and was not a new rule and cannot conclude that the rule established by *Padilla* will be the first and only Supreme Court decision to be given that distinction.

The Bronx court in *Bennett*, however, concluded that *Padilla* was a foreseeable application of *Strickland* rather than a new rule. The court reasoned, relying on *Williams v Taylor* (529 US 362 [2000]) and a statement by Justice Kennedy in *Wright v West* (505 US 277, 308-309 [1992, concurring op]), that virtually

any application of *Strickland* to a new set of facts can never be a new rule. The court also looked to language in the *Padilla* opinion seemingly contemplating its future applicability in collateral proceedings and considered that the *Padilla* rule had already been foreseen by the New York Court of Appeals in *People v McDonald*, which held that incorrect advice about immigration consequences can be ineffective assistance. This court finds this reasoning unpersuasive.

The *Bennett* court reasoned, relying on *Williams*, that any holding expanding the scope of the Sixth Amendment right under *Strickland* cannot be a new rule but is necessarily an application of settled law—*Strickland*—to new facts. This court rejects that reading of *Williams*. The issue in *Williams* was whether the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) (28 USC § 2254 [d]) required a federal court considering a petition for a writ of habeas corpus to defer to state court interpretations of federal law on the issue whether defense counsel in a capital case had been ineffective during the sentencing phase by not investigating or presenting mitigating evidence. The Court discussed *Teague* and some of its progeny while ruling that the AEDPA did not require federal courts to defer to state court interpretations of federal law (*Williams*, 529 US at 379-384, 389-390). The Court noted that the statute effectively codified *Teague* and required the federal courts to rely only upon Supreme Court jurisprudence when called upon to decide if a state court decision was contrary to or was an unreasonable application of settled federal law (*id.* at 380-382).

The *Williams* Court held that it was well-established law that petitioner had a right to competent counsel at the sentencing phase of a capital case, a right including counsel who investigated and presented mitigating evidence to the sentencing jury (*Williams*, 529 US at 393-394). This was not a novel proposition or a new rule: *Strickland* had been decided in 1984 and arose from a claim of ineffective assistance of counsel in the sentencing phase of a capital case (*Strickland v Washington*, 466 US 668 [1984]). Putting aside the key issue in *Williams*—whether the AEDPA had changed the standard of review for federal habeas petitions—the decision was an unremarkable example of applying settled Supreme Court authority to determine whether counsel had been ineffective at sentencing.

The *Bennett* court reasoned that because *Williams* applied *Strickland* to a new set of facts and because application of *Strickland* necessarily involves a case-by-case analysis of the

facts presented, *Padilla* represents an application of the general rule of *Strickland* to new facts and not a new rule. The *Bennett* court relied on a statement by Justice Kennedy in a concurring opinion in *Wright v West* (505 US at 308-309):

> "If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule. . . . Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent."

Yet as Justice Souter pointed out in another concurrence in *Wright v West*, "[t]o survive *Teague* [the rule] must be 'old' enough to have predated the finality of the prisoner's conviction, and specific enough to dictate the rule on which the conviction may be held to be unlawful" (*id.* at 311). The rule of *Strickland* did not dictate the outcome of *Padilla* when so many federal and state decisions had considered the failure to give any advice about the immigration consequences of a plea to be beyond the scope of the Sixth Amendment because the consequences were deemed collateral.

*Padilla*, therefore, did not simply apply *Strickland* or any other Supreme Court precedent to an issue considered before. The issue was not whether an alien defendant has the same right to a competent lawyer as has a citizen defendant, but whether the scope of that representation extends to giving advice about the consequences of a conviction in addition to the sentencing, advice never required before by any federal appellate court. That *Strickland* is the standard by which counsel's performance is judged breaks no new ground, but a ruling that courts must now judge counsel's performance in an area previously considered completely collateral to the criminal process does and is therefore "new."

The *Bennett* court also relied on the extensive discussion in *Padilla* addressing concerns that the decision would result in greatly increased litigation (*Padilla*, 559 US at —, 130 S Ct at 1484-1485). The Supreme Court's observations, however, must be read in light of the presumably continuing applicability of prior Supreme Court case law governing retroactive application of new rules. Nothing in *Padilla* suggests that the Supreme Court intended to abrogate *Teague* and all the rest of its large

body of retroactivity jurisprudence or that the principle of *Teague* should not be applied to cases such as these, which became final long before *Padilla* was decided.

Finally, *People v McDonald* does not, as the court in *Bennett* suggests, show that *Padilla* is not a departure from precedent. The New York Court of Appeals held in *McDonald* that incorrect advice about the immigration consequences of a plea could be ineffective assistance, as had some federal courts (*People v McDonald*, 1 NY3d at 114-115; *see also United States v Couto*, 311 F3d 179, 188 [2d Cir 2002]; *Downs-Morgan v United States*, 765 F2d 1534, 1540-1541 [11th Cir 1985]). Until *Padilla*, these rulings had not been viewed as inconsistent with the holdings of most federal and state courts that counsel was not required to give any such advice in light of the distinction between direct and collateral consequences. *Padilla* completely abrogated all that precedent and is thus a departure from established precedent. Indeed, the New York courts had plainly continued to follow *Ford* after the Court of Appeals had decided *McDonald* (*see e.g. People v Argueta*, 46 AD3d 46 [2d Dept 2007], *lv denied* 10 NY3d 761 [2008]; *People v Johnson*, 41 AD3d 1284 [4th Dept 2007], *lv denied* 9 NY3d 877 [2007]).

B. The *Teague/Eastman* Exceptions to the Rule Against Retroactivity

Under both *Teague* and *Eastman*, new rules of constitutional criminal procedure are applied retroactively only if they fit into one of two exceptions to the general proscription against retroactive application. As relevant to this case, a new rule will be applied retroactively only if it fits within the exception created for "watershed" rules which alter "bedrock procedural elements of criminal procedure which implicates the fundamental fairness and accuracy of the trial" (*People v Eastman*, 85 NY2d at 275, citing *Teague v Lane*, 489 US at 311-312).

The Supreme Court has characterized this exception as "extremely narrow" and has rejected "every claim that a new rule satisfied the requirements for watershed status" (*Whorton v Bockting*, 549 US 406, 418 [2007]). The Supreme Court has emphasized, by words and example, that the exception is in fact exceedingly narrow. Virtually every significant rule of constitutional criminal procedure has not been considered a "watershed" rule and thus has not been applied on collateral review (*see e.g. Whorton v Bockting*, 549 US at 421 [decision in *Crawford v Washington* (541 US 36 [2004]) that admission of testimonial statements from witness absent from trial violates

Confrontation Clause]; *Schriro v Summerlin*, 542 US 348 [2004] [decision in *Ring v Arizona* (536 US 584 [2002]) that aggravating factors necessary for imposition of death penalty must be found by a jury]; *Beard v Banks*, 542 US 406 [2004] [decision in *Mills v Maryland* (486 US 367 [1988]) that invalidated capital punishment schemes that required juries to disregard mitigating factors not found unanimously]). The Supreme Court has underscored the narrowness of this *Teague* exception by noting that only the right to counsel established by *Gideon v Wainwright* (372 US 335 [1963]) qualifies as a "watershed" ruling (*Whorton v Bockting*, 549 US at 419). The Court of Appeals considered *Cruz v New York* (481 US 186 [1987] [admission of redacted confession of nontestifying codefendant against defendant violated Sixth Amendment's Confrontation Clause]) such a watershed because it implicated the "bedrock procedural element" of confrontation and was "central to an accurate determination of guilt or innocence," and applied *Cruz* on collateral review of a conviction (*People v Eastman*, 85 NY2d at 276). A watershed rule must, therefore, be necessary to prevent an "impermissibly large risk of an inaccurate conviction" and one which alters our understanding of the "bedrock procedural elements essential to the fairness of a proceeding" (*Whorton v Bockting*, 549 US at 418 [internal quotation marks and citations omitted]).

The rule in *Padilla* is not necessary to prevent any risk of an inaccurate conviction and indeed does not relate at all to the reliability of the convictions in issue. Nor does it alter the understanding of the bedrock procedural elements essential to the fairness of the proceeding, even though it refers to the right to counsel. As the Supreme Court has noted:

> "this requirement cannot be met simply by showing that the new procedural rule is *based on* a 'bedrock right'. We have frequently held that the *Teague* bar to retroactivity applies to new rules that are based on 'bedrock' constitutional rights. . . . Instead, to meet this requirement, the new rule itself must constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding. In applying this requirement, we again have looked to the example of *Gideon* and 'we have not hesitated to hold that less sweeping and fundamental rules' do not qualify." (*Whorton v Bockting*, 549 US at 420-421.)

The rule of *Padilla* is not as sweeping and fundamental as that

of *Gideon*, and it does not, therefore, rise to the status of a watershed rule that must be applied retroactively. It is unconscionable to convict and incarcerate a defendant who had no lawyer to give advice about the legal process, present a defense, or argue for leniency; it does not shock the conscience to deny a hearing about what immigration advice was given six years ago or more to a defendant who already had a substantial criminal record and avoided incarceration by taking a plea. Reasonable minds have differed over whether a lawyer representing an alien with five prior convictions for the charge at issue must not only provide a competent defense with respect to the plea negotiation, investigations, trial and sentencing, but must also—in the course of negotiating a plea that avoids incarceration of the defendant for three new crimes—advise the defendant about future consequences in civil proceedings—with diminished rights to begin with—governing deportation, exclusion, reentry, change of status and citizenship. Better lawyers, of course, have long advised defendants of immigration consequences, especially when deportation can seem more severe than any potential sentence. But only the most extraordinary changes in the law warrant revisiting convictions long since final. *Padilla* has now settled that immigration advice comes within the scope of minimally effective representation in a criminal case, but this change in the law is not comparable to the rule in *Gideon*.

Accordingly, the effectiveness of petitioner's counsel will be judged as of the time of the representation (*People v Baldi*, 54 NY2d 137, 147 [1981]). Even if it be true that all three of petitioner's counsel did not tell petitioner about the immigration consequences of his guilty pleas, New York law, when the pleas were taken, was clear: counsel was not ineffective for failing to discuss potential immigration consequences of pleas with noncitizen defendants (*People v Ford*, 86 NY2d at 404-405; *People v Holder*, 32 AD3d 734 [1st Dept 2006], *lv denied* 8 NY3d 846 [2007]). Petitioner is not, therefore, entitled to relief on this ground.

## II. Further Claims

Petitioner alleges that all three of his prior counsel misadvised him by stating that these convictions would not subject him to deportation. In two of his cases petitioner states that counsel told him he would not be deported because of a conviction and sentence that resulted in community service. In the remaining case, petitioner avers that his counsel stated that conviction for

a minor offense was not a matter that would lead to his deportation. Petitioner also stated that he would have exercised his right to trial on all of these cases had he been properly advised of the consequences of the pleas. Notably, these assertions are inconsistent with his claim, considered above, that he had been given no advice at all about immigration consequences.

In *Padilla* the Supreme Court held that counsel who gives incorrect advice about immigration consequences has provided ineffective assistance to the defendant (559 US at —, 130 S Ct at 1483). The New York Court of Appeals has also so held (*People v McDonald*, 1 NY3d at 115). In this case, however, the only factual support for this legal claim comes from petitioner's self-serving assertions. His allegations are unsupported by any other affidavits or evidence and were made only after the immigration authorities took petitioner into custody. The record presented by petitioner thus does not present any issue requiring a hearing, especially since by the time of the last plea petitioner had sustained nine misdemeanor convictions for this very offense (CPL 440.30 [4] [d] [i], [ii]; *People v Smiley*, 67 AD3d 713 [2d Dept 2009], *lv denied* 13 NY3d 942 [2010] [no hearing required when petitioner's "self-serving allegations are not supported by any other affidavit or evidence and under all the circumstances attending the case there is no reasonable possibility that such allegations are true"]; *cf. People v Williams*, 72 AD3d 1347 [3d Dept 2010] [petitioner's allegations that counsel repeatedly assured him that he would not be deported were accompanied by affidavit from his girlfriend to the same effect, hearing required]).

Petitioner also contends that his pleas should be vacated because the allocution conducted by the court in each case was inadequate to establish that the plea was knowing and voluntary and had a factual basis under the standards set forth in *Boykin v Alabama* (395 US 238 [1969]) and *People v Fiumefreddo* (82 NY2d 536 [1993]). Collateral review is not available under CPL 440.10 when the issue presented could have been raised on direct appeal (CPL 440.10 [2] [c]). This court has examined the minutes of the pleas taken on dockets 2002NY029321 and 2004NY017122 and the arguments presented here as to their alleged deficiencies would have been cognizable on direct appeal (*People v Aleman*, 43 AD3d 756 [1st Dept 2007]). The minutes of the plea on docket 2003NY021859 are not available; petitioner raises the same issues as on the other dockets. Accordingly, the claims petitioner makes with re-

spect to his 2003 conviction also could have been raised on direct appeal (*id.*). Even if no appeal was available to petitioner as a matter of law, he could still have appealed, invoking the interest of justice jurisdiction of the intermediate appellate courts (*People v Pearson*, 55 AD3d 314 [1st Dept 2008] [conviction reversed in the interest of justice in light of the "extreme deficiency of the plea allocution"]).

Petitioner argues that prior counsel were ineffective for failing to object to the allegedly inadequate allocution. The Court of Appeals has held: "In the context of a guilty plea, a defendant has been afforded meaningful representation when he receives an advantageous plea and nothing in the record casts doubt on the apparent effectiveness of counsel" (*People v Ford*, 86 NY2d at 404). In these cases, each counsel negotiated an advantageous plea for petitioner, who had many prior convictions for the same offense. In the last plea taken, for example, the People recommended a jail sentence; petitioner was sentenced to community service. Petitioner thus received meaningful representation according to the rule of *Ford*.

Accordingly, petitioner's motion to vacate his conviction is denied.